**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edwin Lee ROBERTS and Joseph
Freeman, Defendants-Appellants.**

Nos. 76–1835, 76–1836.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Dec. 14, 1977.

Decided Oct. 11, 1978.

Joseph F. Dolan, U. S. Atty., Denver, Colo. (Rod W. Snow, Asst. U. S. Atty., Denver, Colo., on the briefs), for plaintiff-appellee.

Frederick A. Fielder, Denver, Colo., for defendant-appellant Edwin Lee Roberts.

Neil Ayervais, Denver, Colo. (with Arthur M. Schwartz, P. C., Denver, Colo., on the

brief), for defendant-appellant Joseph Freeman.

Before McWILLIAMS, BARRETT and McKAY, Circuit Judges.

McKAY, Circuit Judge.

Defendants appeal their convictions of importing heroin and conspiring to import heroin in violation of 21 U.S.C. §§ 952(a), 962(a), 963 (1970). Defendant Freeman claims his Sixth Amendment right of confrontation was violated by the introduction of inculpatory statements against him which codefendant Roberts had made. He also claims the trial court erred in refusing to grant a mistrial motion following allegedly prejudicial closing argument by Roberts' trial counsel. Defendant Roberts challenges the trial court's refusal to suppress heroin seized during a warrantless search of an automobile.

### Freeman's Appeal

Tape recordings of three telephone conversations between Roberts and Elizabeth Trammel, an unindicted coconspirator who was the wife of another coconspirator, were introduced against the defendants. The conversations occurred after Trammel's wife arrived in Denver, Colorado, to deliver heroin she had brought to Roberts from Thailand. She had been apprehended during an airline stopover in Hawaii and continued the trip under the direction and custody of government agents to make a controlled delivery to Roberts. She made three monitored telephone calls to Roberts to arrange for him to pick up the drugs. During the conversations Roberts made several passing references to Freeman. Roberts indicated that Freeman was aware of the drug transaction, that he knew how to contact Roberts, and that he had told Freeman the quantity of heroin involved would have to be broken into smaller amounts.

Freeman's counsel objected to the introduction of the tapes on the grounds that there was insufficient proof of conspiracy, apparently arguing they were inadmissible hearsay. Record, vol. 4, at 63–64. Free-

man does not now claim the statements were inadmissible under the conconspirator exception to the hearsay rule, but does assert, for the first time, that their introduction into evidence violated his right of confrontation under the Sixth Amendment.

Ordinarily, a confrontation clause objection cannot be raised on appeal unless it was also raised sometime during the trial court proceedings. *Nolan v. United States*, 423 F.2d 1031, 1041 (10th Cir. 1969), *cert. denied*, 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970). The government, however, has failed to challenge Freeman's right to raise the issue and we accordingly deal with it on the merits. *See United States v. Adams*, 446 F.2d 681, 682 n.1 (9th Cir.), *cert. denied*, 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 257 (1971).

Freeman relies in his arguments primarily on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but his reliance is misplaced. *Bruton* held that an accused's right of confrontation was violated when a codefendant's *inadmissible* hearsay confession was admitted into evidence. This court has previously held that testimony which is *admissible* under the conspiracy exception falls outside the ambit of *Bruton* and does not necessarily violate the Sixth Amendment. *United States v. Cox*, 449 F.2d 679, 688–89 (10th Cir. 1971). However, the hearsay rule, together with its several exceptions, cannot be equated with the confrontation clause.

While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception.

*California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970). *See also Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970).

■ Thus, testimony which might hurdle the hearsay rule via an exception can still run afoul of the Sixth Amendment. Simply pigeonholing evidence into a recognized exception is insufficient to show compliance with the confrontation clause. *E. g., United States v. Baxter*, 492 F.2d 150, 177 (9th Cir. 1973), *cert. denied*, 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974); *United States v. Adams*, 446 F.2d at 683. In the case of a coconspirator's extrajudicial declarations, Sixth Amendment compliance is tested on a case by case basis by examining all the circumstances to determine whether "the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement." *California v. Green*, 399 U.S. at 161, 90 S.Ct. at 1936; *see Dutton v. Evans*, 400 U.S. at 89, 91 S.Ct. 210; *United States v. King*, 552 F.2d 833, 845 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *United States v. Rogers*, 549 F.2d 490, 500 (8th Cir.), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1976).

■ Numerous factors may be relevant in applying this test. These include: (1) what opportunity the jury had to evaluate the credibility of the declarant, (2) whether the statements were crucial to the government's case or devastating to the defense, (3) the declarant's knowledge of the identities and roles of the other coconspirators, (4) whether the extrajudicial statements might be founded on faulty recollection, (5) whether the circumstances under which the statements were made provide reason to believe the declarant misrepresented defendant's involvement in the crime, (6) whether the statements were ambiguous, (7) what limiting jury instructions, if any, were given, (8) whether prosecutorial misconduct was present, etc. *See Dutton v. Evans*, 400 U.S. at 88–89, 91 S.Ct. 210; *United States v. Rogers*, 549 F.2d at 501; *United States v. Kelley*, 526 F.2d 615, 621 (8th Cir. 1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976); *United States v. Snow*, 521 F.2d 730, 734 (9th Cir. 1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976); *United States v. Baxter*, 492 F.2d at 177.

An examination of the record in light of these factors reveals that Freeman's rights under the confrontation clause were adequately protected. There was a "satisfactory basis" to test the credibility of Roberts' comments about Freeman. The conversations had evidentiary value principally in proving the case against Roberts. There were only a few passing references to Freeman which might have indicated that he was acquainted with Roberts and Mrs. Trammel and that he was aware of the importation. Aside from the recordings, previous testimony clearly established Roberts' association and acquaintance with Freeman and their dealings together in heroin. The two had been neighbors for some time while stationed in the Philippines. Record, vol. 3, at 31, 119. Freeman flew to Virginia on one occasion to meet with Roberts because Roberts "was supposed to know a buyer for the heroin." *Id.* at 148. As a result of their drug dealings in Virginia "Roberts was going to send [Freeman] $2,000 to the Philippines to buy heroin." *Id.*, vol. 4, at 31–32.

There is independent evidence that Freeman instructed Mrs. Trammel to deliver the heroin to Roberts in Colorado. *Id.*, vol. 3, at 140; vol. 4, at 40. He helped purchase her round trip ticket to Thailand, accompanied her from California as far as the Philippines, secreted the heroin for a time in Manila and put her on the plane with the heroin to fly to Roberts in Colorado. *Id.*, vol. 3, at 134–38.

Applying the evidence to the above factors we find: (1) This array of evidence provided sufficient basis for the jury to test the believability of Roberts' references to Freeman. (2) The comments added little to the case against Freeman. They certainly were not "crucial" in the proof. His culpability previously had been proved. (3) From the independent evidence it is clear Roberts knew Freeman and the extent of Freeman's

involvement. (4) The accuracy of Roberts' recollection is evidenced by the consistency of his taped comments with the other evidence. (5) We find no reason why Roberts would have wanted to misrepresent Freeman's involvement. Indeed, all the other evidence indicates there was no misrepresentation. (6) Any ambiguity in the references could have only helped Freeman to persuade the jury of his innocence in the face of the strong independent evidence of guilt. (7) There was no error in the jury instructions. (8) No prosecutorial misconduct was alleged.

■ There is no reason to believe cross-examination of Roberts would have cast doubt on his perception, memory or sincerity. Freeman's Sixth Amendment rights were not breached.

Freeman next argues he should have been granted the new trial he requested because portions of the closing argument by Roberts' counsel were unduly prejudicial. Roberts' counsel had argued the evidence showed, if anything, distribution, possession or use of heroin by the defendants, but certainly not importation. Record, vol. 5, at 67–73. Although Freeman may have elected a different defensive tack, this was simply the application of a frequently used and sometimes effective tactic.

■ An antagonistic defense from a codefendant may require severance, particularly if that defense admits to some or all of the elements of the charge. E. g., United States v. Johnson, 478 F.2d 1129, 1131–33 (5th Cir. 1973); see Bailey v. United States, 410 F.2d 1209, 1213 (10th Cir.), cert. denied, 396 U.S. 933, 90 S.Ct. 276, 24 L.Ed.2d 232 (1969). Here, however, Roberts' defense claiming the elements of the crimes were not proved was essentially consistent with Freeman's defense, which likewise maintained the government failed in meeting its burden of proof on the charge of importation. The comments of codefendants' counsel concerning distribution, possession and use found support in the evidence and fell within the permissible range of comment by

counsel. Record, vol. 3, at 126–38, 145; vol. 4, at 24; see Turberville v. United States, 112 U.S.App.D.C. 400, 404, 303 F.2d 411, 415, cert. denied, 370 U.S. 946, 82 S.Ct. 1596, 8 L.Ed.2d 813 (1962). The trial judge carefully instructed the jury that nothing said by any of the attorneys could be considered evidence in the case and that the jury's view of the evidence, not the attorneys' views, was to control the decision. We cannot say the judge abused his discretion in refusing to grant Freeman a new trial.

## Roberts' Appeal

After being called by Trammel's wife, Roberts was driven to the airport in Denver by an acquaintance to take delivery of the heroin. He located Mrs. Trammel and led her to the waiting car where they secreted the drugs under the front seat. Government agents, who had Mrs. Trammel under surveillance, then arrested Roberts and the driver, searched the car and seized the heroin.

Roberts maintains this warrantless search and seizure violated his Fourth Amendment rights. We find, however, that the agents' conduct did not require suppression of the seized drugs. Before Roberts approached Mrs. Trammel the officers did not know where or when the heroin would be transferred and therefore had insufficient grounds for a warrant. Only after Mrs. Trammel emerged from the car and told the agents the exchange had occurred did they have probable cause for the arrest and search. Record, vol. 3, at 6. As the car began to leave, the officers moved in for the arrest. Id.

■ Despite the government's failure to cite any authority in its behalf, we note that decisions of this court and the Supreme Court support a finding that the search was reasonable. "[Where] there is probable cause, an automobile, because of its mobility, may be searched without a warrant in circumstances that would not justify a warrantless search of a house or office." Stone

*v. Patterson,* 468 F.2d 558, 560 (10th Cir. 1972); *see Chambers v. Maroney,* 399 U.S. 42, 48–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Sigal,* 500 F.2d 1118, 1121 (10th Cir.), *cert. denied,* 419 U.S. 954, 95 S.Ct. 216, 42 L.Ed.2d 172 (1974); *United States v. Pollard,* 466 F.2d 1, 4 (10th Cir. 1972), *cert. denied,* 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973). We hold that there was ample evidence to support a finding of probable cause for the search and that exigent circumstances existed to conduct the search without a warrant.

Numbers 76–1835 and 76–1836 are affirmed. Number 76–1834, argued with these two cases, will be decided separately.