**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Laszlo SZABO, Defendant-Appellant.**

No. 85–1686.

United States Court of Appeals,
Tenth Circuit.

May 12, 1986.

Robert N. Miller, U.S. Atty., and Raymond P. Moore, Asst. U.S. Atty., Denver, Colo., for plaintiff-appellee.

Richard W. Bryans, Denver, Colo., and Michael F. Morrissey, Denver, Colo., for defendant-appellant.

Before McKAY, ANDERSON and TACHA, Circuit Judges.

ANDERSON, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 10(e). The cause is therefore submitted without oral argument.

The defendant, Laszlo Szabo, appeals his conviction by a jury on one count of interstate transportation of falsely made checks, in violation of 18 U.S.C. § 2314 (1982), and one count of conspiracy to commit such offenses, in violation of 18 U.S.C. § 371 (1982). He contends his confrontation rights under the Sixth Amendment were violated when the trial judge allowed a coconspirator to give damaging testimony against the defendant at trial without first holding a hearing to determine if the anticipated testimony bore adequate "indicia of reliability." We conclude that no error was committed, and affirm.

The disputed testimony in this case was given at trial by Burton Vishno, who admitted to involving the defendant in a scheme to negotiate bogus certified checks. Vishno testified that he was introduced to the defendant in late 1982 while the latter was in New Haven, Connecticut. Among other things, the two of them discussed financing for a racetrack defendant wanted to establish in Colorado. Vishno told the defendant that he had a source who could provide falsely certified checks for fifty percent of the face value. Defendant requested such a check in the amount of $20,000 and asked that it be made payable to his company, Great American Financial, Inc. Thereafter, Vishno obtained the check from his source, "Tommy" Gamble, and delivered it to defendant at his office in Denver, Colorado, on January 10, 1983. Two days later defendant paid Vishno $6,000. By other testimony, it was established that defendant had deposited the $20,000 to his business account and made use of the funds.

Over the next two weeks, additional parties were introduced into the scheme by defendant. Daniel Powers, Glen Dial and Michael Allred, later charged as co-defendants, and Timothy Watts, (collectively referred to by defendant as his "wrecking crew," R. Vol.IV, at 26), met with Vishno upon defendant's initiative. The initial meetings of Dial and Watts with Vishno were in defendant's presence. Vishno's first contact with Powers was from a telephone in defendant's office, in defendant's presence, and at his instance. Vishno then testified to a number of subsequent meetings with the various individuals at which the unlawful scheme was discussed and substantially pursued. The defendant was present at some, but not all, of the meetings.

To facilitate the expected additional transactions, Vishno's source, Gamble, and Gamble's associate, Vincent Edo, came to Denver and established themselves at the hotel where Vishno was staying. At various times during this several day period, and upon the request of each recipient, falsely certified checks were obtained from Gamble by Vishno and delivered as follows: a check for $500,000 to Powers; a check for $300,000 to Allred and Dial; and three checks in the respective amounts of $100,000, $100,000, and $50,000 to Watts.

Watts, Vishno, Gamble, and Edo then left town. They met again in Philadelphia approximately one week later to divide the proceeds of checks Watts had cashed in Baltimore, Maryland, and were arrested by the F.B.I.

After Vishno had testified to the foregoing, a bench conference was requested by the government. Here, the government advised that it intended to elicit some coconspirator statements from Vishno for the first time. The court responded that it would receive such testimony conditionally and reserve ruling on admissibility under Fed.R.Evid. 801(d)(2)(E) until the close of the government's case. Defendant was granted a continuing objection to the hearsay nature of the proposed coconspirator statements. Thereafter, the government elicited three brief instances of coconspirator statements which added some detail to the previous testimony of Vishno. The only reference made to the defendant in

those statements was to identify him as being present during one of the conversations in question. It was established that the defendant was not present at another conversation which was described.

The coconspirator statements were fully received at the close of the government's case after the court had heard testimony from F.B.I. agents and other witnesses, both corroborating Vishno's testimony and independently establishing defendant's unlawful activities. The court's finding of admissibility under Fed.R.Evid. 801(d)(2)(E) (inclusive of the necessary quantum of proof, and the following required elements: independent evidence, membership, during the course, and in furtherance of the conspiracy) is clearly supported by the record. It is not an issue on this appeal. *See United States v. Pilling,* 721 F.2d 286 (10th Cir.1983); *United States v. Du-Friend,* 691 F.2d 948 (10th Cir.1982), *cert. denied,* 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983); *United States v. Petersen,* 611 F.2d 1313 (10th Cir.1979), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2986, 64 L.Ed.2d 854 (1980). In fact, much of what defendant argues on appeal is based on his premise that the Rule does apply.[1]

Anticipating the damaging nature of Vishno's testimony, defendant's counsel filed a motion in limine prior to trial asking that the court:

> [D]etermine that the witness Vishno's, (sic) statements are crucial and devastating, and whether or not there are any particularized guarantees of trustworthiness. In the event the government fails to demonstrate both of the above and foregoing, the statements be held inadmissable at the trial of the defendant Szabo.

R. Vol. I, at 12. The grounds stated in support of the requested relief were:

> "1. That the witness Vishno's, testimony against the defendant Szabo, spoken as a co-conspirator, was both crucial and devastating to the defendant, Szabo.
>
> "2. Albeit the government may have established a conspiracy which the defendant does not confess, there was insufficient showing, in fact no showing, of any guarantees of trustworthiness as required by law and F.R.E. Rule 801(b)(2)(e) (sic).
>
> "3. That the witness Vishno, is a convicted felon who has, through arrangements made with the government, avoided trial of at least two additional felonies and is currently awaiting sentence.
>
> "4. That the statements of the witness Vishno, have no *indicia* of reliability and do not provide the functional equivalent of cross-examination.
>
> "5. That the government must be required to demonstrate why the witness Vishno's, statement has any particularized guarantee of trustworthiness."

R. Vol. I, at 11.

In arguing his motion to the trial judge, counsel for the defendant summed up his position as follows:

> So, that is the purpose of this. Primarily, we feel that Vishno's testimony, merely because it comes in under the Rule, is not trustworthy, and the trustworthiness is one of the prongs that is set forth in citations (sic) of authorities that must be met.

R. Vol. IV, at 3.

The motion in limine was denied. Even assuming a Sixth Amendment issue was raised in that motion, defense counsel made no further objection at any time during trial on stated constitutional grounds. "Ordinarily, a confrontation clause objection cannot be raised on appeal unless it was also raised sometime during the trial

---

**1.** Defendant's statement of the question presented for review is as follows:

> The question presented is, whether statements that satisfy Federal Rules of Evidence 801(d)(2)(E), which provides for the admissibility of statements of co-conspirators necessarily satisfies the requirement of the confrontation clause of the Constitution of the United States.

Brief of Appellant at 1. Defense counsel objected to coconspirator statements at trial on the ground that the evidence did not show a conspiracy had been established, R. Vol. IV, at 45; R. Vol. V, at 109–111; but, as just indicated, he has abandoned that position.

court proceedings." *United States v. Roberts*, 583 F.2d 1173, 1175 (10th Cir.1978), *cert. denied*, 439 U.S. 1080, 99 S.Ct. 862, 59 L.Ed.2d 49 (1979) (citing *Nolan v. United States*, 423 F.2d 1031, 1041 (10th Cir.1969), *cert. denied*, 400 U.S. 848, 91 S.Ct. 47, 27 L.Ed.2d 85 (1970)). The government has argued defendant's lack of proper and timely objection below (Brief of Appellee at 11). However, in view of the fact that a violation of an important constitutional right is alleged, and that the constitutional issue was at least arguably raised at one time during the proceedings below, by way of the motion in limine, we elect to exercise our discretion in favor of review.

Because defendant's arguments reflect a lack of clarity on the point, we note at the outset that the bulk of Vishno's testimony was admissible without regard to the hearsay rules and satisfied beyond question defendant's Sixth Amendment right of confrontation. That testimony consisted of Vishno's own statements made while testifying at trial subject to cross-examination by the defendant. As we pointed out in *United States v. Smith*, 692 F.2d 693, 697–98 (10th Cir.1982):

> Rule 801(d)(2)(E) and the cases construing it are irrelevant to the *direct testimony* of a coconspirator. By definition, hearsay is 'a statement, *other than one made by the declarant while testifying at the trial or hearing*, offered in evidence to prove the truth of the matter asserted.' Fed.R.Evid. 801(c) (emphasis added.) There is absolutely no need to fit [the witness'] *in-court* statements into the coconspirator provision of Rule 801(d)(2)(E). *See Laughlin v. United States*, 385 F.2d 287, 292 (D.C.Cir.1967) (rule requiring independent evidence of a conspiracy before admitting coconspirator out-of-court statements 'does not exclude proof of a conspiracy by the direct

testimony under oath of a party to it'), *cert. denied*, 390 U.S. 1003, 88 Sup.Ct. 1245, 20 L.Ed.2d 103 (1968).

(Emphasis in the original.) There is no constitutional requirement that such testimony be examined for trustworthiness before being placed before the jury. Rather, the Confrontation Clause, in its optimum application, envisions:

> [A] personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895), cited in *Ohio v. Roberts*, 448 U.S. 56, 63–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980).[2]

Most of the other parts of Vishno's disputed testimony were also admissible without regard to the hearsay exemption of Fed.R.Evid. 801(d)(2)(E), and without implicating the Confrontation Clause. For example, coconspirator statements of Watts to the effect that he had excellent banking relationships in the Cayman Islands and in Hong Kong, and similar declarations, would be admissible not to prove the truth of the matters asserted, but as "background for the conspiracy or to explain the significance of certain events." *Inadi*, — U.S. —, 106 S.Ct. 1121, 1128 n. 11, 89 L.Ed.2d 390 (1986); *see also United States v. Green*, 600 F.2d 154 (8th Cir.1979).[3] "Admission of non-hearsay 'raises no confrontation clause concerns.' *Tennessee v. Street*, — U.S. —, 105 S.Ct. 2078 [85

---

**2.** *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 heavily relied upon by the defendant, was further explained, and confined to its facts by the Supreme Court in its recent decision in *United States v. Inadi*, — U.S. —, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986).

**3.** Likewise, the statement attributed to Dial that he "could put some people together to move

checks," R. Vol. IV, at 48; and Watts' alleged statements about his ability to move checks, and his need for money to put the plan "in shape," *id.* at 48; and alleged statements by Powers that "the F.B.I. was all over his lawyer's office [and that] [t]hey wanted him for questioning," R. Vol. V, at 31, were all admissible for purposes other than to prove the truth of the matters stated.

L.Ed.2d 425] (1985). Cross-examination regarding such statements would contribute nothing to Confrontation Clause interests." *Inadi*, —— U.S. ——, 106 S.Ct. 1121, 1128, n. 11, 89 L.Ed.2d 390 (1986). Commenting on the admissibility of testimony similar to that given by Vishno in this case, the United States Supreme Court in *Dutton v. Evans*, 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970), stated:

> Neither a hearsay nor a confrontation question would arise had [the witness'] testimony been used to prove merely that the statement had been made. The hearsay rule does not prevent a witness from testifying as to what he has heard; it is rather a restriction on the proof of fact through extrajudicial statements.

Additionally, defendant's own declarations recounted by Vishno obviously raised no Confrontation Clause issue since defendant was able to "confront" his own alleged statements when he took the witness stand, by admitting, explaining or denying them.

We consider the few brief coconspirator statements admitted under Fed.R.Evid. 801(d)(2)(E), and defendant's claims of Confrontation Clause infringement, within the context of settled law in this circuit. In *United States v. Roberts*, 583 F.2d at 1176, we referred to the established general principle that the Confrontation Clause and the hearsay rules do not perfectly overlap. We adopted the view that declarations admitted under the coconspirator exemption do not automatically satisfy the Sixth Amendment.[4] We stated:

> "In the case of a coconspirator's extrajudicial declarations, Sixth Amendment compliance is tested on a case by case basis by examining all the circumstances to determine whether 'the trier of fact

[has] a satisfactory basis for evaluating the truth of the prior statement.' *California v. Green*, 399 U.S. at 161, 90 S.Ct. at 1936; *see Dutton v. Evans*, 400 U.S. at 89, 91 S.Ct. 210 [at 219]; *United States v. King*, 552 F.2d 833, 845 (9th Cir.1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977); *United States v. Rogers*, 549 F.2d 490, 500 (8th Cir.) *cert. denied*, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1976).

> "Numerous factors may be relevant in applying this test. These include: (1) what opportunity the jury had to evaluate the credibility of the declarant, (2) whether the statements were crucial to the government's case or devastating to the defense, (3) the declarant's knowledge of the identities and roles of the other coconspirators, (4) whether the extrajudicial statements might be founded on faulty recollection, (5) whether the circumstances under which the statements were made provide reason to believe the declarant misrepresented defendant's involvement in the crime, (6) whether the statements were ambiguous, (7) what limiting jury instructions, if any, were given, (8) whether prosecutorial misconduct was present, etc. *See Dutton v. Evans*, 400 U.S. at 88–89, 91 S.Ct. 210 [at 219]; *United States v. Rogers*, 549 F.2d at 501; *United States v. Kelley*, 526 F.2d 615, 621 (8th Cir.1975), *cert. denied*, 424 U.S. 971, 96 S.Ct. 1471, 47 L.Ed.2d 739 (1976); *United States v. Snow*, 521 F.2d 730, 734 (9th Cir.1975), *cert. denied*, 423 U.S. 1090, 96 S.Ct. 883, 47 L.Ed.2d 101 (1976); *United States v. Baxter*, 492 F.2d at 177...."

*Id.* at 1176; *see also United States v. Alfonso*, 738 F.2d 369, 372 (10th Cir.1984).

---

**4.** The circuits are divided on this point, a circumstance commented upon by Justice Marshall in his dissent in *Inadi*, 106 S.Ct. 1121 (1986). *See* Weinstein & Berger, *Weinstein's Evidence*, Vol. 4, ¶ 801(d)(2)(E) [01], at 801–255. However, even in some circuits which reject the view that admissibility under Fed.R.Evid. 801(d)(2)(E) automatically satisfies the Confrontation Clause, it is stated that there is no violation "absent unusual circumstances." *United States v. DeLuna*, 763 F.2d 897, 910 (8th Cir.), *cert. denied sub nom*, —— U.S. ——, 106 S.Ct.

382, 88 L.Ed.2d 336 (1985). Likewise, the "case by case" review of Sixth Amendment compliance in this circuit is not meant to imply that constitutional admissibility of extrajudicial statements, and admissibility under the federal coconspirator rule of evidence involve entirely separate inquiries. To the contrary, the exacting procedure and findings necessary for evidentiary compliance contain within them much, and frequently all, the safeguards required by the Confrontation Clause.

We reaffirm those views, including the implicit holding that while constitutional reliability exists as a substantive consideration, constitutional procedures for determining reliability do not. The latter point brings us to defendant's central argument. Defendant contends that constitutional error was committed when the district court refused "to conduct a hearing on the trustworthiness of the testimony and oral statements of the unindicted coconspirator Burton L. Vishno." (Appellant's Opening Brief at 2).[5] Defendant shows us no authority.[6] We know of none, which imposes a constitutional requirement upon the trial court to hold a separate hearing, or even to make separate findings, on the subject of reliability. In that regard, defendant has simply confused procedure with substance.[7]

Further analysis of defendant's appeal discloses yet another fundamental error. Constitutional reliability inquiries in coconspirator cases focus on the out-of-court declarant and that declarant's statements. Defendant's focus in this case has from the beginning been on Vishno, the in-court declarant. He argues that Vishno's testimony was not trustworthy because he was a convicted felon testifying pursuant to a plea bargain agreement.[8] Defendant has at no time contended that the coconspirator statements themselves, as attributed to the out-of-court declarants Dial, Watts, and Powers, were unreliable on any of the grounds listed by this court in *Roberts,* or by the Supreme Court in *Dutton,* or that those declarants were unreliable. The stated ground for a Confrontation Clause violation is that Vishno was unreliable. In *Dut-*

*ton,* a witness, Shaw, testified in court about what a fellow prisoner had told him concerning the defendant, Evans. The Court found no Confrontation Clause violation because the statements themselves bore indicia of reliability. As to the testifying witness and his role in relating the out-of-court declaration, the Court observed that "the witness was vigorously and effectively cross-examined by defense counsel" *Dutton,* 400 U.S. at 87, 91 S.Ct. at 219, and:

> "From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only to what he has seen but also as to what he has heard.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "Evans exercised, and exercised effectively, his right to confrontation on the factual question whether Shaw had actually heard Williams make the statement Shaw related. And the possibility that cross-examination of Williams could conceivably have shown the jury that the statement, though made, might have been unreliable was wholly unreal."

*Id.* at 88–89, 91 S.Ct. at 219.

Finally, though not urged by the defendant to do so, we examine the virtually invisible coconspirator statements, which form the minute residue of this inquiry, for indicia of reliability, including whether or not they were crucial or devastating. *See Dutton,* 400 U.S. at 74, 91 S.Ct. at 210; *United States v. Roberts,* 583 F.2d at 1176.

---

**5.** Refusal to "conduct an in camera hearing concerning the second prong of the test mentioned in *Ohio v. Roberts....* constitutes error on the part of the trial court." (Appellant's Opening Brief at 5).

**6.** The only case cited by the defendant in support of the procedural argument that a determination on reliability must be made initially by the court "as a matter of law" (Appellant's Brief at 8) dealt solely with procedures for determining admissibility under the hearsay rule. *Carbo v. United States,* 314 F.2d 718 (9th Cir.1963), *cert. denied, sub nom,* 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498 (1964).

**7.** *See, e.g., United States v. Green,* 600 F.2d at 158: "We reject appellants' claim that an on-the-record finding of compliance with the Confrontation Clause must be made at the time of trial." Even the most enthusiastic advocates of strict guarantees of reliability have acknowledged that "the kinds and the quantity of guarantees that will suffice are questions left to the laboratory of the lower courts." Hinde, *Federal Rule of Evidence 801(d)(2)(E) and the Confrontation Clause: Closing the Window of Admissibility for Coconspirator Hearsay,* 53 Fordham L.Rev. 1291, 1308 (1985).

**8.** See defendant's Motion in Limine, and associated arguments to the trial court (page 1486, *supra*).

Vishno related a few statements by Powers regarding a technique he proposed for moving his checks, R. Vol. IV, at 49–50; and, perhaps, a few other comments by Dial and Watts which could fit within this category. None of the testimony directly involved the defendant, made accusations against him, or attributed purported admissions or incriminating statements to him.

No extended discussion of the coconspirator testimony is necessary. It obviously was not crucial to the government's case against the defendant or devastating to the defense. Other testimony, including defendant's own admissions to F.B.I. Agent John Larsen, who testified at trial, and copies of the bad checks, abundantly established the defendant's involvement in the scheme and his knowledge of the identities of the coconspirators, as well as their active participation. The statements involved no possibility of faulty recollection by the out-of-court declarant, recitation of past events, ambiguity, or misrepresentation as to the defendant's involvement in the crime. The trial judge specifically cautioned the jury, both during the trial and in his instructions, about the trustworthiness of Vishno's testimony. Moreover, no prosecutorial misconduct is alleged. Clearly, "the trier of fact had a satisfactory basis for evaluating the truth of the prior statement." *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970).[9] Having gone through the foregoing exercise, we now observe that this is one of those cases where the correct determination of admissibility under Fed.R.Evid.

801(d)(2)(E) carried within it a full overlap of Sixth Amendment Protection.

Affirmed.

---

**9.** The search for "indicia of reliability" does not consist of a checklist of fixed tests applicable as a matter of necessity to each case. As we stated in *United States v. Roberts*, 583 F.2d at 1176, "[n]umerous factors may be relevant." The search for whether "the trier of fact had a satisfactory basis for evaluating the truth of the prior statement," *California v. Green*, 399 U.S. at 161, 90 S.Ct. at 1936, will involve different considerations depending upon the case. Examples of significantly different fact situations include: prior cross-examined testimony given under oath, *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597; tape recorded conversations, *Inadi*, —— U.S. ——, 106 S.Ct. 1121, 89

L.Ed.2d 390; and in-court testimony attributing oral statements to an out-of-court declarant, *Dutton*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213. Moreover, the availability to the defendant of compulsory process by which out-of-court declarants may be brought to court for cross-examination, provides further protection against unreliable statements. Although reserving questions of reliability, the Supreme Court's general comments in *Inadi* with respect to compulsory process emphasize its importance to defendants for guarantees of reliability since "availability," which is the question addressed in that case, is important only because of considerations of reliability.