FILED
United States Court of Appeals
Tenth Circuit

July 24, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SHANE ROACH,

     Defendant - Appellant.

No. 17-2085

_____

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:15-CR-02732-JAP-1)**
_____

Aric G. Elsenheimer, Assistant Federal Public Defender, Office of the Federal Public Defender for the District of New Mexico, Albuquerque, New Mexico, for Defendant – Appellant.

James R.W. Braun, Assistant United States Attorney (James D. Tierney, Acting United States Attorney, on the brief) Office of the United States Attorney for the District of New Mexico, Albuquerque, New Mexico, for Plaintiff – Appellee.
_____

Before **MATHESON**, **MCKAY**, and **MCHUGH**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

     A jury convicted Shane Roach of coercing D.G. into prostitution in violation of

18 U.S.C. § 1591(a)(1). Mr. Roach recruited D.G. and, with help from Angela

Santillanes, prostituted D.G. to clients. D.G. became scared and reached out for help, leading to Mr. Roach's and Ms. Santillanes's arrests.

The Government charged Mr. Roach and Ms. Santillanes under § 1591(a)(1), but after Ms. Santillanes agreed to testify against Mr. Roach, it dropped her charge. At trial, Mr. Roach attempted to cross-examine Ms. Santillanes about three topics. The Government successfully objected.

On appeal, Mr. Roach argues that the district court's rulings preventing cross-examination violated (1) the Confrontation Clause and (2) the Federal Rules of Evidence, and because these errors were not harmless, we must vacate his conviction and remand for a new trial.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm Mr. Roach's conviction because (1) Mr. Roach waived his Confrontation Clause arguments, and (2) any error in limiting his cross-examination under the evidence rules was harmless.

## I. BACKGROUND

### A. *Factual Background*

#### 1. The Prostitution Operation

In April 2015, Mr. Roach found D.G.'s advertisement on Backpage.com ("Backpage"), a website where prostitutes solicit clients, and offered to be her pimp. On their second in-person meeting, she agreed.

From May to June 2015, Mr. Roach and Ms. Santillanes managed the prostitution operation, advertising D.G.'s services on Backpage and arranging for her to meet clients in motels and hotels. Clients scheduled an appointment through "Diamond"—Ms.

2

Santillanes's alias—who then would inform Mr. Roach. He would then contact D.G. through a prepaid TracFone he bought for her. The client would meet D.G. in her room, and she would collect payment after the sex act. She saw three to six clients a day. Mr. Roach would then collect the money from her.

Mr. Roach controlled the enterprise and D.G.'s activities. He chose her rates, selected her clients, and kept the proceeds. D.G. testified that he controlled her contact with others, in part by keeping her identification (e.g., driver's license) and her personal cellphone. In his testimony, Mr. Roach disputed the level of control he had outside of client matters.

## 2. The Arrests and Search

In June 2015, D.G. started to fear that Mr. Roach was going to send her to another pimp. She notified Life Link, an organization that offers "program[s] for victims of human trafficking." ROA, Vol. III at 514. It contacted the Albuquerque Police Department.[1] Police then contacted D.G., and she eventually disclosed her location. The police removed her from her motel room and interviewed her. She divulged Mr. Roach's first name, identified him in an online photograph, and identified his car.

After further investigation, officers obtained a warrant to track and search Mr. Roach's car and to search his residence. After tracking his car's location, they stopped it, discovered Mr. Roach and Ms. Santillanes inside, and arrested them. Executing the

---

[1] D.G. testified that she had also contacted the police, but the testifying detective did not mention her call at trial.

search warrant, law enforcement searched Mr. Roach's Albuquerque apartment and found prepaid gift cards that had been used to purchase advertisements on Backpage.[2]

## B. *Procedural Background*

### 1. First Indictment, Government Deal, and Superseding Indictment

In July 2015, a grand jury indicted Mr. Roach and Ms. Santillanes on one count of sex trafficking by means of force, threats, fraud, and coercion in violation of 18 U.S.C. § 1591(a)(1). The Government made a deal with Ms. Santillanes: she agreed to testify against Mr. Roach in exchange for having her charge dismissed. In April 2016, a superseding indictment charged Mr. Roach alone with violating § 1591(a)(1).[3]

### 2. Pretrial Motions

Mr. Roach filed a pretrial motion to cross-examine Ms. Santillanes regarding her dismissed charge. He also filed a set of three pretrial motions to cross-examine Ms. Santillanes about her prior and current involvement in prostitution. The district court granted Mr. Roach's first motion and denied the others.[4]

---

[2] Officers also discovered heroin; a digital camera with photos of D.G.'s identification and photos used for her Backpage advertisement; and a .22 caliber firearm, which D.G. identified as Mr. Roach's.

[3] In the superseding indictment, the Government originally charged Mr. Roach with two counts of sex trafficking under § 1591(a)(1): trafficking (1) D.G. between May 27, 2015 and June 11, 2015 and (2) Ms. Santillanes between March 1, 2015 and June 11, 2015. Before trial, the Government dismissed the second count.

[4] We describe these motions in greater detail in our discussion of Mr. Roach's Confrontation Clause arguments.

### 3. Trial Testimony

Mr. Roach's trial spanned four days. This appeal concerns the testimony of three witnesses: D.G., Ms. Santillanes, and Mr. Roach. We provide an overview of their testimony here.[5]

a. *D.G.*

D.G. testified about her initial meeting with Mr. Roach, day-to-day activities working for him, and her escape. She also testified about specific instances when Mr. Roach was controlling and violent, stating that he isolated her from the outside world using violence, intimidation, and threats.

b. *Ms. Santillanes*

Ms. Santillanes corroborated much of D.G.'s testimony. She confirmed that Mr. Roach had been both controlling and violent toward D.G. The district court limited defense counsel's cross-examination on three lines of questioning: (1) the length of Ms. Santillanes's potential sentence under 18 U.S.C. § 1591(a)(1), (2) lying to her pretrial services officer about residing with her grandparents, and (3) her potential fraud scheme with the prepaid gift cards discovered in Mr. Roach's apartment. Mr. Roach contests these limitations on appeal.

c. *Mr. Roach*

Mr. Roach confirmed that he, Ms. Santillanes, and D.G. had engaged in a commercial prostitution enterprise, but he denied controlling D.G. through violence,

---

[5] We describe their testimony in greater detail in our discussion of Mr. Roach's Confrontation Clause and rules of evidence arguments.

5

intimidation, and threats. He disputed D.G.'s testimony about specific instances of violence and intimidation, but did admit that he hit her at least once. He characterized their professional relationship as consensual and supportive.

### 4. **The Verdict and Sentence**

The jury found Mr. Roach guilty. The district court imposed a sentence of 180 months in prison. Roach filed this timely appeal.

## II. **DISCUSSION**

On appeal, Mr. Roach argues that the district court improperly barred his cross-examination of Ms. Santillanes on the three topics identified above.

First, he argues the district court violated the Confrontation Clause because it "limited [his] cross-examination of Ms. Santillanes to such an extent that the jury did not receive sufficient information to make a discriminating appraisal of Ms. Santillanes'[s] motives and bias." Aplt. Br. at 36. We hold that Mr. Roach waived his Confrontation Clause arguments because he failed to raise them below and did not argue plain error on appeal.

Second, he argues in the alternative that the court abused its discretion under the Federal Rules of Evidence. *See* Aplt. Reply Br. at 4. But even assuming a rules violation, we hold any error was harmless.

We therefore affirm Mr. Roach's conviction.[6]

---

[6] We address Mr. Roach's Confrontation Clause arguments first and then turn to his evidence-rules arguments. Mr. Roach primarily raises constitutional arguments on appeal. Briefing on his nonconstitutional arguments is sparse.

## A. *Confrontation Clause*

Mr. Roach not only failed to make a Confrontation Clause argument below, his failure to argue plain error here waives this issue on appeal.

### 1. **Additional Factual Background**

We first provide additional background on (a) Mr. Roach's pretrial motions and (b) defense counsel's cross-examination at trial.

#### a. *Pretrial motions*

##### i. First pretrial motion

Mr. Roach filed a "motion to allow cross-examination of D.G. and [Ms. Santillanes] regarding outstanding dismissed without prejudice charges." ROA, Supp. Vol. I at 44 (capitalization omitted). He stated that Ms. Santillanes was "initially charged as a codefendant . . . regarding . . . the charge of sex trafficking involving D.G.," but the Government "moved to dismiss the charge against [her]." *Id.* at 46. He argued that he should be allowed to question Ms. Santillanes about her motivations for testifying. *Id.* at 47. He made no mention of his Sixth Amendment right to confrontation nor a relevant Federal Rule of Evidence, but instead cited two cases. *Id.* (citing *Hart v. United States*, 565 F.2d 360, 362 (5th Cir. 1978) and *United States v. Harris*, 462 F.2d 1033, 1035 (10th Cir. 1972)). Neither case concerned allegations of a Confrontation Clause violation. The district court granted the motion.

##### ii. Other pretrial motions

Mr. Roach also filed three motions in limine to cross-examine Ms. Santillanes about (1) her promoting prostitution in the present case and previously in the states of

7

Arizona, New Mexico, and Texas; (2) prostituting an individual in a related case; (3) her conviction for prostitution in Arizona; (4) prostituting herself while living with Mr. Roach; and (5) answering phone calls for Mr. Roach about D.G.

In each motion, he argued that exclusion of the questioning would violate his right to confrontation. Because, Mr. Roach contended, the questioning would reveal Ms. Santillanes's biases, prejudices, and motives, he had a right under the Confrontation Clause to cross-examine her on these five topics. He also relied on Federal Rules of Evidence 404(b), 412, and 608. The district court denied the three motions.

b. *Trial cross-examination*

At trial, defense counsel attempted to cross-examine Ms. Santillanes about the three aforementioned topics. The Government objected, and the district court sustained the objections.

i. Length of sentence

After asking Ms. Santillanes about her dropped charge, defense counsel cross-examined her about the length of her potential sentence:

> [Defense Counsel]: And that was quite a break, because before that happened, you were facing a pretty lengthy prison sentence, right?
>
> [Government]: Objection. Ask that we approach.
>
> The Court: Go ahead and state your objection.
>
> [Government]: We're getting into punishment which I believe is not permissible evidence.
>
> The Court: That's correct. That's an incorrect form to inform the jury that there is a severe punishment.

8

ROA, Vol. III at 407-08. Defense counsel agreed with the court's statement and explained that he "wasn't attempting to introduce anything about [Mr. Roach's] potential punishment," but rather "[his] question was aimed toward [Ms. Santillanes's] understanding, her motivation to testify falsely." *Id.* at 409. The court instructed counsel to "avoid any questions about punishment," *id.*, and informed the jury to disregard the question, *id.* at 410. Defense counsel did not pursue this matter further. He did not mention the Confrontation Clause.

### ii. Statement to pretrial services officer

Before defense counsel resumed cross-examination of Ms. Santillanes on the second day of trial and before the jury returned to the courtroom, he requested "to cross-examine Ms. Santillanes on lying to her pretrial services officer." *Id.* at 399. The proposed cross-examination was based on her attorney's having filed a pretrial motion stating her grandparents were willing to serve as her third-party custodians after the Government dropped her charges. *Id.* Defense counsel contended that when the probation officers "went to go visit [her grandparents, they] told them she had not stayed with them, and furthermore that she would not have permission to stay with them if she had asked." *Id.*

The Government objected to this request, arguing it would elicit "improper impeachment evidence under any of the rules." *Id.* The prosecutor stated that Ms. Santillanes "didn't lie" and explained:

> What happened is that her original plan was to stay with those people, and when she got up here, they told her that they wouldn't allow her to stay with them, so she was staying with

9

a third party that she was not authorized to be. But there isn't criminal conduct in any way. And at best, it could be described as a misunderstanding between the probation officer and Ms. Santillanes.

*Id.* at 399-400.

The district court agreed with the Government and stated that it was "familiar with what happened because she was under pretrial supervision, and reports were sent to me from pretrial services." *Id.* at 400. "[I]f that testimony were allowed, [Ms. Santillanes] would probably try to explain . . . what happened, and it might result in others having to be called as witnesses to testify." *Id.* It "[did not] think it [was] proper impeachment." *Id.* Defense counsel said nothing further on the issue.

### iii. Prepaid gift cards

Finally, defense counsel questioned Ms. Santillanes about her collection of used prepaid gift cards:

> [Defense Counsel]: And would you save all of those credit cards[7] even after there was no money left on them?
>
> [Ms. Santillanes]: Yes.
>
> [Defense Counsel]: Why?
>
> [Ms. Santillanes]: Because there may have been something that myself and [Mr. Roach] were interested in doing after the prostitution.
>
> [Defense Counsel]: Well, this thing you were talking about that you were interested in, [Mr. Roach] didn't know anything about it, right?

---

[7] Counsel was referring to prepaid gift cards as credit cards.

10

> [Ms. Santillanes]: No, but he showed a lot of interest in it, so we started talking about it together, and what we could do with it.
>
> [Defense Counsel]: And you were essentially instructing [Mr. Roach] on how to commit fraud, right?

*Id.* at 414-15. At that point, the Government objected as to relevance. *Id.* at 415.

Defense counsel explained that Ms. Santillanes "was interested in perpetrating some sort of a fraud . . . . [s]o it goes to her credibility." *Id.* The Government argued that the deadline had passed for Rule 404(b) evidence and it could not evaluate this line of inquiry without adequate notice. *Id.* at 416.

The district court then asked how this cross-examination would impeach Ms. Santillanes's testimony because she would be "talking about a crime that [had not been] committed." *Id.* at 417. Counsel responded:

> [W]hat I was talking about, and this went along testimony I was developing, that [Ms. Santillanes] was the one that knew all about the criminal activity, and she would teach [Mr. Roach] about that.

*Id.* The court then said that counsel had already developed that point because Ms. Santillanes had testified to teaching Mr. Roach about the prostitution business. *Id.* It concluded that the evidence was inadmissible "under the language of 404(b)" and that defense counsel should "stay away from it." *Id.* Defense counsel did not argue further.

### 2. **Legal Background**

We provide legal background on (a) offers of proof to preserve an objection for appeal, (b) offers of proof in the context of limitations on cross-examination, and (c) waiver.

11

a. *Offers of proof*

To preserve an objection to the exclusion of evidence for appeal, the proponent

must make an offer of proof at trial, "first, describ[ing] the evidence and what it tends to

show and, second, identify[ing] the grounds for admitting the evidence." *United States v.*

*Adams*, 271 F.3d 1236, 1241 (10th Cir. 2001); *see also* Fed. R. Evid. 103(a)(2). This is

so unless the nature of the excluded evidence and the ground for admitting it was

"apparent from the context." *Adams*, 271 F.3d at 1241 (quotations omitted); *see also*

Fed. R. Evid. 103(a)(2).[8] "Unless the context in which evidence is offered makes clear

the reason for the proffer, error cannot be assigned to the exclusion of evidence without

an offer of proof." *United States v. Martinez*, 776 F.2d 1481, 1485 (10th Cir. 1985).

The proponent may present the offer in his questioning and objections at trial, *see*

*Adams*, 271 F.3d at 1241, motions in limine, *see United States v. Mejia-Alarcon*, 995

F.2d 982, 988 n.3 (10th Cir. 1993), or pretrial conferences, *see Frederick v. Swift Transp.*

*Co.*, 616 F.3d 1074, 1083 (10th Cir. 2010).

---

[8] Rule 103(a)(2) provides that "if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." The provision does not mention, as our *Adams* case does, that the offer of proof must not only describe the evidence but also identify the grounds for admitting it. The advisory committee notes to Rule 103(a) make clear, however, that "[r]ulings on evidence cannot be assigned as error unless (1) a substantial right is affected, and (2) the nature of the error was called to the attention of the judge." Fed. R. Evid. 103(a) advisory committee's note to 1972 proposed rules.

b. *Limitations on cross-examination*

An offer of proof is generally necessary to preserve an excluded line of cross-examination questioning. "Federal Rule 103 does not carve out any exception for questions posed on cross." McCormick on Evidence ch. 6, § 51, at n.17 (Kenneth S. Broun ed., 7th ed. 2016). In *United States v. Martinez*, we determined the defendant failed to preserve his argument that the district court improperly limited his cross-examination of a government witness. 776 F.2d at 1485-86. On appeal, the defendant asserted that the district court should have allowed the cross-examination under Federal Rules of Evidence 404(b) and 406, but "[n]o offer of proof was made, and the trial judge was not given any indication of defendant's presently expressed purpose for his inquiry." *Id*. at 1485. Because defense counsel did not tell the judge the evidentiary ground nor "the reason for the cross-examination," he failed to preserve his challenge for appeal. *Id*. at 1485, 1486.

When a district court restricts cross-examination at trial, the party seeking to cross-examine forfeits a challenge on appeal by failing to state the ground for objection, *id*.; stating a different ground at trial than on appeal, *United States v. Gramajo*, 565 F. App'x 723, 727 n.2 (10th Cir. 2014) (unpublished) (cited for persuasive value under Fed. R. App. P. 32.1, 10th Cir. R. 32.1); *United States v. Faruki*, 803 F.3d 847, 856 (7th Cir. 2015); *United States v. Reaves*, 649 F.3d 862, 865 (8th Cir. 2011); or by failing at trial to object to the limitation at all, *United States v. Mullins*, 613 F.3d 1273, 1283 (10th Cir. 2010).

13

c. *Waiver*

An appellant who fails to preserve an evidentiary objection below may argue and establish plain error on appeal, *United States v. LaHue*, 261 F.3d 993, 1009 (10th Cir. 2001), by showing that the "district court committed (1) error (2) that is clear or obvious under current law, and which both (3) affected her substantial rights and (4) undermined the fairness, integrity, or public reputation of judicial proceedings," *Mullins*, 613 F.3d at 1283. Failure to argue plain error on appeal waives the argument. *United States v. Solomon*, 399 F.3d 1231, 1238 (10th Cir. 2005); *United States v. MacKay*, 715 F.3d 807, 831 (10th Cir. 2013).

3. **Analysis**

a. *Mr. Roach failed to raise a Confrontation Clause objection below*

Mr. Roach failed to raise the Confrontation Clause issue below for all three lines of questioning, either at trial or in his pretrial motions. To preserve the issue, he needed to describe (1) the evidence and (2) the ground to admit it. *See Adams*, 271 F.3d at 1241. He failed to do the former in his pretrial motions and the latter at trial.

As previously explained, Mr. Roach's Confrontation Clause arguments concern the district court's refusal to allow his lawyer to cross-examine Ms. Santillanes about (1) the length of her potential sentence under 18 U.S.C. § 1591(a)(1), (2) her alleged lie to her pretrial services officer, and (3) her possible alleged scheme to use the prepaid gift cards for fraud. In his pretrial motions, Mr. Roach failed to identify any of these three topics for cross-examination.

In his first motion, he argued that he should be allowed to question Ms. Santillanes

14

about her deal with the Government.  But he did not mention the length of her potential sentence under 18 U.S.C. § 1591(a)(1) as a cross-examination topic.[9]  In his other three motions, he argued that he should be able to cross-examine Ms. Santillanes about her prior and current participation in prostitution under his constitutional right to confrontation, but he did not mention any of the three topics he raises on appeal.[10]

Although Mr. Roach is correct that he need not "specifically mention[] the Confrontation Clause" when it is apparent from the context, Aplt. Br. at 40; *see Adams*, 271 F.3d at 1241, he must also assert the *particular topic* for cross-examination, *see United States v. Summers*, 414 F.3d 1287, 1297 n.7 (10th Cir. 2005) (preserving the

---

[9] Moreover, he did not mention his right to confrontation under the Sixth Amendment as a ground for cross-examination about her deal.

Mr. Roach cites *United States v. Szabo*, 789 F.2d 1484 (10th Cir. 1986), to argue that he sufficiently preserved the constitutional argument in his first pretrial motion, but *Szabo* is distinguishable.  In *Szabo*, the defendant had filed a motion in limine arguing that a government witness's statements "ha[d] no indicia of reliability and [did] not provide the functional equivalent of cross-examination."  *Id*. at 1486.

We addressed his Confrontation Clause argument on appeal because "the constitutional issue was at least arguably raised at one time during the proceedings below, by way of the motion in limine," *id.* at 1487, in that it contained the phrase "indicia of reliability," the Confrontation Clause standard at the time for admitting hearsay evidence for an unavailable declarant.

Here, Mr. Roach's motion in limine did not "arguably raise[]" a Confrontation Clause claim with respect to the length of sentence.  It not only failed to mention the Confrontation Clause or its underlying standard, it also did not mention the length of the sentence as a topic for cross-examination.

[10] As mentioned above, the three motions requested the opportunity to cross-examine Ms. Santillanes about (1) her promoting prostitution in the present case and previously in the states of Arizona, New Mexico, and Texas; (2) prostituting an individual in a related case; (3) her conviction for prostitution in Arizona; (4) prostituting herself while living with Mr. Roach; and (5) answering phone calls for Mr. Roach about D.G.

15

constitutional argument by demanding cross-examination of co-defendant's hearsay statement at trial); *United States v. Szabo*, 789 F.2d 1484, 1487 (10th Cir. 1986) (preserving the constitutional argument by requesting cross-examination of co-conspirator's hearsay statements in a motion in limine). In his pretrial motions, Mr. Roach failed to raise the length of Ms. Santillanes's potential sentence, the alleged lies to her pretrial services officer, and the alleged prepaid card scheme.

When Mr. Roach did raise these issues at trial, he failed to state a Confrontation Clause ground on which the court should permit the cross-examination. Indeed, Mr. Roach concedes that he "did not mention the Confrontation Clause at trial," Aplt. Reply Br. at 3, but argues he sufficiently raised his constitutional arguments in his pretrial motions. He claims that he "repeatedly stress[ed] . . . the constitutional basis for his requests for cross-examination of Ms. Santillanes on various topics," and that any restriction on such questioning "would violate the Confrontation Clause." Aplt. Br. at 39-40. We disagree. Although he mentioned the Confrontation Clause in his second set of pretrial motions, he neglected to mention the three topics for cross-examination in any of his pretrial motions. It was therefore not "apparent" when he pursued cross-examination on these topics at trial that he was relying on the Confrontation Clause. *Adams*, 271 F.2d at 1241.[11]

_____

[11] Mr. Roach also argues that "the combination of Mr. Roach's frequent pretrial assertions of his constitutional right to cross-examination, the district court's recognition of that right and Mr. Roach's objections to curtailing his cross-examination during trial preserved the Confrontation Clause issues." Aplt. Br. at 41. But because his pretrial motions failed to identify any of the cross-examination topics he wished to pursue at trial and now on appeal, and because he failed to object based on confrontation regarding

In sum, because Mr. Roach neither mentioned the three topics in his pretrial motions nor the Confrontation Clause at trial, he forfeited his arguments below.

b. *Mr. Roach fails to argue plain error on appeal*

Mr. Roach fails to argue plain error on appeal. He therefore has waived his Confrontation Clause arguments about the three lines of questioning and we do not consider them further. *See Solomon*, 399 F.3d at 1238; *MacKay*, 715 F.3d at 831.

B. *Rules of Evidence*

Mr. Roach argues "even assuming arguendo [he] did not preserve the cross-examination restrictions as constitutional issues, he preserved them for non-constitutional review under the abuse-of-discretion standard." Aplt. Reply Br. at 4. He contends the district court abused its discretion under the Federal Rules of Evidence when it prevented him from cross-examining Ms. Santillanes on the three topics.

Although we question whether Mr. Roach adequately preserved his nonconstitutional objections, we need not address that issue nor whether the district court abused its discretion. Even assuming the district court abused its discretion, any error was harmless.

1. **Legal Background**

"A party may claim error in a ruling to . . . exclude evidence only if the error affects the substantial right of the party . . . ." Fed. R. Evid. 103(a). "The rule does not

---

these topics at trial, we do not discern an adequate contextual ground, and certainly not a "clear" one, *Martinez*, 776 F.2d at 1485, for Mr. Roach to overcome his forfeiture of his Confrontation Clause arguments.

purport to change the law with respect to harmless error." Fed. R. Evid. 103(a) advisory committee's note to 1972 proposed rules.

"We will not reverse a defendant's conviction on the basis of a district court's erroneous admission [or exclusion] of evidence if the error was harmless to the defendant." *United States v. Kupfer*, 797 F.3d 1233, 1243 (10th Cir. 2015); *see United States v. Irving*, 665 F.3d 1184, 1209 (10th Cir. 2011) (applying to excluded evidence). "A non-constitutional error is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990) (en banc) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)). "To make this assessment, we review the entire record de novo, examining the context, timing, and use of the erroneously admitted [or excluded] evidence at trial and how it compares to properly admitted evidence." *Kupfer*, 797 F.3d at 1243 (quotations omitted). The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence. *See United States v. Jones*, 818 F.3d 1091, 1101 (10th Cir. 2016).

2. **Analysis**

Mr. Roach argues the district court's limitations on cross-examination had a "substantial influence on the verdict." Aplt. Br. at 55. But for three reasons, the

Government has demonstrated that the limitations—individually or cumulatively[12]—did not substantially influence the outcome of the case.[13]

First, Mr. Roach challenged Ms. Santillanes's credibility throughout the cross-examination. Defense counsel questioned her about her past methamphetamine use and how she was still testing positive for drugs a year after charges had been brought in this case. He also asked her about "not telling [Mr. Roach] that you were actively prostituting" when she was romantically involved with him, which "was a pretty big lie, right?" ROA, Vol. III at 403. Most important, he inquired about the deal she made with the Government to testify. Although the district court blocked questions about the length of the potential sentence, counsel was able to ask about her charges being dropped in return for her testimony.

Second, Mr. Roach called two witnesses to impeach Ms. Santillanes's character for truthfulness. He questioned Vanessa Baca, who "ha[s] children with [Mr. Roach's]

---

[12] To the extent Mr. Roach attempts to present a cumulative error argument regarding the restrictions on the three lines of questioning, "we aggregate all the errors that we have found to be harmless and determine whether their cumulative effect on the outcome of the trial mandates reversal." *United States v. Anaya*, 727 F.3d 1043, 1060-61 (10th Cir. 2013) (quotations omitted). For the reasons presented above, we conclude that any evidence-rules errors, considered individually or together, did not substantially affect the outcome of the trial. *See id.* at 1061.

[13] The Government primarily argues that any constitutional error—as opposed to nonconstitutional error—was harmless. As it recognizes, the standard for a harmless constitutional error is whether we are "able to declare a belief that it was harmless beyond a reasonable doubt." *Rivera*, 900 F.2d at 1470 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). This standard requires more from the Government than showing a nonconstitutional error was harmless.

cousin," *id*. at 639, about her "opinion as to [Ms. Santillanes's] truthfulness," *id*. at 644.

She responded that Ms. Santillanes was not truthful. Similarly, he asked Christopher

Baca, Mr. Roach's former roommate, a similar question, and he gave the same answer.

*See id*. at 661-62.

Third, even assuming the blocked cross-examination would have put Ms.

Santillanes's credibility into further doubt, it would not have substantially influenced the

outcome of the case. The jury had ample evidence to convict Mr. Roach without her

testimony. Under 18 U.S.C. § 1591(a)(1), the Government needed to prove that Mr.

Roach knowingly "recruit[ed], entice[d], harbor[ed], transport[ed], provide[d],

obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed]" D.G., knowing that

"means of force, threats of force, fraud, [or] coercion" would be used to "cause [her] to

engage in a commercial sex act." 18 U.S.C. § 1591(a)(1).[14] D.G. described incidents in

---

[14] Section 1591(a) reads in full:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or
within the special maritime and territorial jurisdiction
of the United States, recruits, entices, harbors,
transports, provides, obtains, advertises, maintains,
patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of
value, from participation in a venture which has
engaged in an act described in violation of
paragraph (1),

knowing, or, except where the act constituting the violation of
paragraph (1) is advertising, in reckless disregard of the fact,
that means of force, threats of force, fraud, coercion described
in subsection (e)(2), or any combination of such means will

20

which Mr. Roach attacked or threatened her. For example, she testified that when he learned she had been speaking with others on Facebook, he drove her to the outskirts of Albuquerque. With a gun in his lap, he told her that he was disappointed with her because she was talking to "a bunch of people." ROA, Vol. III at 502-03. Mr. Roach then slapped her face "multiple" times and warned that, if she left him, he would hurt one of her family members. *Id.* at 504-05. Mr. Roach disputed these episodes, but he did testify to an occurrence when he hit D.G. He admitted to "slapp[ing] her with an open hand once across her face," *id.* at 706-07, because he believed that she was "still doing side dates," *id.* at 705. The evidence thus showed that Mr. Roach used violence to coerce D.G. into prostitution.

Even if we "are not totally free from doubt about whether" the limitations on cross-examination "may have had some influence on the outcome of the case," "we do not have *grave* doubt that the errors," alone or cumulatively, "had a *substantial* effect on the outcome." *United States v. Charley*, 189 F.3d 1251, 1270 n.29 (10th Cir. 1999) ("Grave doubt, by definition, does not refer to every level of doubt, and *substantial* influence, by definition, does not mean any or some influence."). Assuming that the district court abused its discretion in limiting cross-examination, any errors were harmless because they did not have a substantial influence in the outcome of the case.

---

be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

## III. **CONCLUSION**

Mr. Roach's challenge on appeal to the district court's foreclosure of his three lines of cross-examination fails. He has waived his Confrontation Clause arguments, and any error under the rules of evidence was harmless. We uphold Mr. Roach's conviction and affirm the district court's judgment.