# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3145

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Danny Reaves, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 17, 2011
Filed: August 12, 2011

_____

Before LOKEN, BEAM, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge.

A jury found defendant Danny Reaves (Reaves) guilty of interfering with interstate commerce by robbing an armored car, in violation of 18 U.S.C. §§ 1951 and 2, and using, carrying, brandishing, and discharging a firearm during and in relation to that robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2. The district court[1] sentenced Reaves to 240 months' imprisonment for the robbery conviction and 120

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

months' imprisonment for the firearm conviction, to be served consecutively.[2] Reaves appeals his convictions on several grounds, and we affirm.

## I.    BACKGROUND

At approximately 10:30 a.m. on May 1, 2009, a Rochester armored car, driven by Matthew Gutierrez, made a routine stop at the Douglas County Treasurer's Office in north Omaha, Nebraska, to pick up approximately $83,000 in cash and checks. Princeton Hervey, the armored car's passenger, entered the Treasurer's Office while Gutierrez remained in the driver's seat. Hervey exited the Treasurer's Office about five minutes later with two bags containing the deposits. Two masked robbers quickly approached Hervey as he attempted to place the bags inside the armored car and one of them shot Hervey with a Taser. The robbers then took the bags and attempted to flee. While the robbers were still between ten and fifteen feet away from Hervey, a gunfight ensued. Hervey was shot in the leg during the exchange, but he believes he shot one or both of the robbers as well. An eyewitness testified that one of the robbers appeared to be favoring his arm as he fled the scene. After the gunfight, the robbers entered a white van and left the parking lot at a high rate of speed. Eyewitnesses, including Hervey, Gutierrez, and a nearby shopkeeper, did not see any innocent bystanders anywhere near the gunfight. In fact, Hervey testified that only the two robbers were in his line of sight while he was firing his pistol. A total of $31,000 in cash was missing from the armored car after the robbery.

At the crime scene, investigators found blood about five feet from the back of the armored car that matched Reaves's DNA. Officers also recovered the robbers' Taser at the crime scene, which was registered to a woman named April Winn. April

---

[2]Reaves also pled guilty to one count of bank robbery, in violation of 18 U.S.C. § 2113(a), and was sentenced to 240 months' imprisonment, to be served concurrently with his 240-month sentence for the armored car robbery. The bank robbery conviction is not at issue on this appeal.

Winn is the maiden name of April Ruffin, the aunt of Reaves's child.  Although Ruffin initially told investigators that someone stole her Taser, she later told investigators, and testified at trial, that she purchased and registered the Taser at Reaves's request in January 2009.  According to Ruffin, Reaves then took the Taser and Ruffin did not have contact with Reaves until sometime after the robbery.

At about 11:45 p.m. on the night of the robbery, Reaves was treated in a St. Louis hospital for a gunshot wound to his left wrist, and a graze wound to his right forearm.  A week later, officers arrested Reaves in Omaha and, at that time, he was in need of medical attention due to a potentially life-threatening infection in his hand and forearm.  Officers transported Reaves to a local hospital where he remained for three days until his condition stabilized.  On the night of Reaves's arrest, officers executed a search warrant on a house associated with Reaves and located a bag containing Reaves's St. Louis medical records and $7,680 in cash.  Near the bag, officers also found medicine, wound-care supplies, and $520 in cash.  A marijuana growing operation was located in the basement of the house.

A grand jury returned an indictment charging Reaves with robbing the armored car and using a firearm to do so.  Before trial, Reaves sent Ruffin several letters in an apparent attempt to influence her testimony or to dissuade her from testifying altogether.  In one letter, Reaves even included a suggested script for her testimony, which directed Ruffin to testify that the Taser was stolen.

At trial, Reaves took the stand and attempted to explain the evidence stacked against him as follows: He drove to the Treasurer's Office on the day of the robbery to tend to personal business related to his car's title.  While still in the parking lot, he was beckoned by two individuals in a van who were seeking to purchase marijuana. Reaves, an admitted marijuana dealer, recognized the driver as a previous customer but he did not know the passenger.  He agreed to sell the men marijuana and walked back to his car, weighed some marijuana, and packaged it for sale.  As he was walking

back to the van to deliver the drugs, he witnessed his would-be customers rob an armored car parked outside the Treasurer's Office. During the ensuing gunfight between the robbers and Hervey, Reaves tried to take cover but he was accidentally shot in the left wrist and grazed by a bullet on his right forearm. Reaves became afraid that, while investigating the robbery, police would find the marijuana plants he was transporting in his car and trace them to his marijuana growing operation. Therefore, Reaves fled the scene and called some friends to see if they could help dismantle his growing operation. One friend was about to take a trip to St. Louis and Reaves decided to travel with her. Reaves arrived in St. Louis more than thirteen hours after the robbery, received medical treatment, and remained in the hospital for three or four days. He then returned to Omaha and was arrested by police several days later. Reaves denied that he had Ruffin purchase a Taser for him and he explained that the large amount of cash police found with his St. Louis medical records was related to marijuana sales.

After considering the above evidence, the jury convicted Reaves on both counts. On appeal, Reaves challenges his convictions on the following grounds: (A) the district court erred when it denied Reaves the opportunity to impeach Ruffin with questions regarding her alleged involvement in an insurance-fraud scheme; (B) the district court erred when it denied his motion for a new trial because the government failed to disclose exculpatory evidence; (C) Reaves's pre-trial letters to Ruffin did not warrant the district court's jury instruction pertaining to defendants' attempts to influence witnesses; (D) there was insufficient evidence linking him to the robbery; and (E) he was denied effective assistance of counsel.

## II.    DISCUSSION

### A.    Limited Impeachment of April Ruffin

As stated above, Ruffin testified at trial that she purchased and registered a Taser for Reaves in January 2009.  That same Taser was used in the robbery and recovered at the crime scene.  At trial, the district court barred Reaves's attempt to impeach Ruffin by cross-examining her about her alleged involvement in a 2007 insurance-fraud scheme.  According to Reaves's trial counsel, in 2007, Ruffin and Reaves staged a break-in to Ruffin's house, Ruffin submitted a fraudulent insurance claim for vandalism, and Reaves fixed the damage to Ruffin's house.  At trial, Reaves's attorney argued that questions about the alleged fraud were permissible, "not to prove that it's a bad act" under Federal Rule of Evidence 608(b), but to demonstrate Ruffin's bias or motive.  On appeal, however, Reaves primarily argues that questions about the fraud were permissible to prove Ruffin's involvement in a prior "bad act" under Rule 608(b).  We typically review a district court's decision to limit cross-examination for a "clear abuse of discretion," United States v. Alston, 626 F.3d 397, 403 (8th Cir. 2010), cert. denied, 131 S. Ct. 1842 (2011), but where, as here, "a party has failed to preserve an evidentiary issue for appellate review, we review for plain error."[3] United States v. Elbert, 561 F.3d 771, 775 (8th Cir. 2009) (internal quotation omitted). "Under plain error review, we reverse only if there has been (1) an error, (2) that is plain, and (3) that affects substantial rights." United States v. Richardson, 537 F.3d 951, 959 (8th Cir. 2008).

---

[3]To the extent Reaves also reasserts his argument from trial that questions regarding the fraud were permissible to demonstrate Ruffin's bias or motive, we review the district court's limitation of Ruffin's cross-examination for an abuse of discretion.  But, regardless of whether we apply abuse-of-discretion or plain-error review, we conclude that any error on this point was harmless and does not merit reversal.

Under Rule 608(b), a district court, at its discretion, may permit impeachment of a witness by cross-examination regarding specific instances of conduct not resulting in conviction, if the conduct is probative of the witness's character for truthfulness or untruthfulness. United States v. Amahia, 825 F.2d 177, 180 (8th Cir. 1987). Reaves is correct that insurance fraud is the sort of "bad act" that is probative of a witness's trustworthiness under Rule 608(b). Id. at 181 (finding no abuse of discretion under Rule 608(b) where the district court permitted the government to cross-examine defendant regarding insurance fraud). But, we need not decide whether the district court erred when it barred inquiry into the alleged insurance-fraud scheme at issue here because any such error did not affect Reaves's substantial rights. Evidence of Ruffin's dishonesty was already before the jury because Ruffin, on both direct and cross-examination, admitted that she lied to investigators when she first spoke to them regarding the Taser. Moreover, Ruffin was otherwise subjected to extensive cross-examination and it is apparent that questions regarding the insurance-fraud scheme would have acted as a double-edged sword–insofar as such inquiry would have impeached Ruffin's testimony, it would have also impeached Reaves's testimony because he was likewise involved in the alleged fraud.

Finally, even if Ruffin's testimony had been totally undermined, the other evidence linking Reaves to the robbery was overwhelming. Reaves admits he was at the scene of the robbery and that he was shot in the wrist during the gunfight between Hervey and the robbers. A Taser belonging to Ruffin, the aunt of Reaves's child, was located at the scene. Reaves's blood was also found in close proximity to the armored car and no eyewitnesses saw any innocent bystanders near the armored car or caught up in the gunfight between the robbers and Hervey. In fact, Hervey testified that only the two robbers were in his line-of-sight while he was firing his pistol and another witness testified that one of the robbers appeared to be favoring his arm as he fled the scene. After being shot in the wrist, Reaves suspiciously fled to St. Louis, where he was treated for gunshot wounds some thirteen hours after the robbery. And finally, after Reaves returned to Omaha from St. Louis, officers searched a house associated with Reaves and located a sack containing his St. Louis medical records and $7,680 in

cash. In light of this mountain of evidence, we are unconvinced by Reaves's assertion that "[w]ithout Ruffin's testimony, the government struggles to obtain a conviction in this case."

## B. Motion for New Trial

Next, Reaves argues that he is entitled to a new trial under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and Giglio v. United States, 405 U.S. 150, 153-55 (1972), the government must disclose evidence that affects the credibility of the government's witnesses. This rule "encompasses evidence known only to police investigators and not to the prosecutor." Strickler v. Greene, 527 U.S. 263, 280 (1999) (internal quotation omitted). But, the non-disclosure of such evidence only justifies a new trial if the evidence is "material"–i.e., "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Quintanilla, 25 F.3d 694, 698 (8th Cir. 1994) (quotation omitted).

After trial, an investigator disclosed to Reaves and the prosecutor, for the first time, Reaves's phone records from October 1, 2008, through April 15, 2009. The records show that eleven calls were made from Ruffin's land line to Reaves's cellular phone between March and April 2009. Reaves filed a motion for a new trial, contending that the investigator's failure to disclose the phone records was a Brady violation. Such records, Reaves averred, would have allowed him to impeach Ruffin's testimony that she had no contact with Reaves between the time she purchased the Taser on January 6, 2009, and the armored-car robbery on May 1, 2009. The district court denied Reaves's motion for a new trial, concluding that there was no reasonable probability that the outcome of the trial would have been any different if the records would have been disclosed. We review a district court's denial of a motion for new trial based upon a Brady violation for an abuse of discretion. United States v. Deavault, 190 F.3d 926, 929 (8th Cir. 1999).

We conclude that the district court did not err, let alone abuse its discretion, in denying Reaves's motion for a new trial under Brady because the phone records were not "material." As the district court pointed out, the phone records demonstrated that calls were placed from Ruffin's land line to Reaves's phone, but the length of those calls indicate that no conversations actually took place. And, Ruffin was not the only individual with access to her land line–both Reaves's child and the child's mother live with Ruffin and had access to the phone. Therefore, the phone records do not necessarily contradict Ruffin's testimony that she had no contact with Reaves between January 6, 2009, and May 1, 2009. Moreover, as discussed above, Ruffin was otherwise subjected to extensive cross-examination and, even if the phone records totally undermined Ruffin's testimony, there was a mountain of other evidence pointing to Reaves's guilt. There is simply not a reasonable probability that the outcome of this trial would have been different if Reaves's phone records would have been disclosed to the defense.[4]

## C.    Jury Instructions Regarding Reaves's Attempts to Influence Ruffin

Reaves also contends that the district court committed reversible error when it instructed the jury as follows:

> Attempts by a defendant to influence a witness in connection with the crime charged in this case may be considered by you in light of all the other evidence in the case. You may consider whether this evidence shows a consciousness of guilt and determine the significance to be attached to any such conduct.

---

[4]The district court noted that Reaves "arguably had at least as much access to the records as the government did," but also acknowledged that the records were difficult to obtain. See United States v. Coplen, 565 F.3d 1094, 1097 (8th Cir. 2009) ("The government does not suppress evidence in violation of Brady by failing to disclose evidence to which the defendant had access through other channels." (quotation omitted)). Because the phone records were not "material," we need not decide whether Reaves had access to his phone records through other channels.

-8-

<u>See</u> Eighth Circuit Model Jury Instructions (Criminal) § 4.09 (2011). Reaves does not argue that the instruction misstates the law; rather, he argues that the evidence introduced at trial–i.e., Reaves's pre-trial letters to Ruffin–did not warrant the instruction. "We review the inclusion of a jury instruction for an abuse of discretion," <u>United States v. Listman</u>, 636 F.3d 425, 431 (8th Cir. 2011), and, to determine whether evidence is sufficient to justify an instruction, we review "the evidence and any reasonable inference from that evidence in the light most favorable to the government." <u>United States v. Whitehill</u>, 532 F.3d 746, 751 (8th Cir. 2008) (quotation omitted).

At trial, the government introduced exhibit 33A, one of the letters Reaves sent to Ruffin before trial. In the letter, Reaves tells Ruffin that he has to "dig up anything an[d] everything" on her because she is testifying against him. He also asks, "[W]hy help [the government]?" and even included a "prep sheet," which consisted of a list of proposed questions and answers for her testimony regarding the Taser. We hold that this evidence was sufficient to submit the instruction at issue to the jury. <u>See</u> <u>United States v. Grajales-Montoya</u>, 117 F.3d 356, 361 (8th Cir. 1997) (holding that use of similar instruction was appropriate where a co-defendant instructed a potential witness "not to give federal agents any papers or information").

## D.    Sufficiency of the Evidence

Reaves contends that there was insufficient evidence linking him to the robbery and, therefore, his convictions must be reversed. We review sufficiency challenges de novo, "viewing the evidence in the light most favorable to the verdict, accepting all reasonable inferences that support the verdict, and reversing only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." <u>United States v. Joos</u>, 638 F.3d 581, 588 (8th Cir. 2011). As outlined above, our review of the record reveals that the evidence supporting Reaves's convictions is sufficient–indeed, overwhelming–and a reasonable jury could have found Reaves guilty beyond a reasonable doubt.

**E.    Ineffective Assistance of Counsel**

Finally, Reaves asserts an ineffective assistance of counsel claim, "to the extent the record supports it."  But, he acknowledges that "this may be better pursued on a [28 U.S.C.] § 2255 application."  We agree, and we decline to entertain this contention on direct appeal.  See United States v. Bauer, 626 F.3d 1004, 1009 (8th Cir. 2010) ("Any claim alleging ineffective assistance of counsel should be raised in a collateral proceeding under 28 U.S.C. § 2255.").

**III.    CONCLUSION**

For the foregoing reasons, we affirm.

_____