# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 13-40426

United States Court of Appeals
Fifth Circuit

**FILED**
June 12, 2014

Lyle W. Cayce
Clerk

EMPIRE INDEMNITY INSURANCE COMPANY,

Plaintiff - Appellee

v.

N/S CORPORATION; JALIN, LIMITED, doing business as My Car Wash,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:11-CV-166

Before BARKSDALE, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:*

Jalin, Ltd. (Jalin) and N/S Corporation (N/S) challenge the 16 August 2011 denial of N/S' motion to transfer venue (joined by Jalin) and the 15 March 2013 summary judgment awarded Empire Indemnity Insurance Company (Empire) in its action, under diversity jurisdiction, seeking a declaratory-judgment. AFFIRMED.

---

* Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 13-40426

## I.

In 2004, N/S manufactured and sold allegedly defective car-wash parts to Jalin, which opened a car wash in December 2004, in Plano, Texas. In the relevant time period, N/S purchased commercial general liability (CGL) insurance policies from Liberty Surplus Insurance Corporation (Liberty). Liberty issued two CGL policies to N/S for the policy periods 1 July 2004 to 1 July 2005 and 1 July 2005 to 1 July 2006; each policy had a limit of liability for $1 million per occurrence and $2 million aggregate (per policy). In addition, Empire issued an umbrella liability policy to N/S, for the period 1 July 2004 to 1 July 2005, providing excess coverage of $5 million.

In January 2008, Jalin sued N/S in Texas state court for damages caused by allegedly defective parts (underlying action). Liberty defended N/S; Empire monitored the proceeding and allegedly participated in mediation. In March 2011, following trial in the underlying action, the jury returned a verdict finding, *inter alia*, N/S negligently caused damages to Jalin; damages exceeded $3 million.

Three weeks after that verdict, Empire filed this action (coverage action), against N/S, Jalin, and Liberty, seeking a declaratory judgment that it had no duty to indemnify N/S for the underlying action. Defendants filed cross-claims regarding Liberty's duty to indemnify. This action was referred to a magistrate judge (MJ).

N/S moved, in May 2011, for transfer of venue in this coverage action to the United States District Court for the Central District of California (district in California). Jalin joined the motion; Empire and Liberty opposed it. The MJ issued a report and recommendation that the motion be denied. In August 2011, the district court adopted the MJ's report and recommendation and denied the motion.

In April 2012, approximately 13 months after the underlying-action verdict, N/S, Jalin, and Liberty executed a settlement agreement, mutually releasing all claims against each other.  That agreement also included a covenant not to execute on the then-unfiled judgment in the underlying action.  As part of the settlement, Liberty agreed to pay Jalin $650,000; N/S, to pay Jalin $450,000 and assign to it any claims N/S had against Empire.  (The settlement resolved all claims between N/S, Jalin, and Liberty in the underlying and coverage actions, and those claims have been dismissed, except for Jalin's negligence claim against N/S, addressed below.  The only remaining issues in this coverage action relate to Empire's claimed duty to indemnify N/S.)

The settlement included Jalin's seeking entry of judgment in the underlying action only on its negligence claim.  Accordingly, in June 2012, the Texas state court entered judgment, awarding Jalin approximately $3.1 million, as well as pre- and post-judgment interest and costs.

Following entry of the underlying-action judgment, Empire moved in this coverage action for summary judgment on four grounds:  (1) its insured, N/S, was not, and would never be, legally liable for the judgment, based on the full release and covenant not to execute; (2) Liberty's policy limits were not exhausted, and, therefore, Empire's excess coverage was not triggered; (3) the damages were either not covered by Empire's policy or fell outside its policy period; and (4) N/S violated Empire's policy by assigning its rights to Jalin.

In December 2012, the MJ filed a report and recommendation that Empire's summary-judgment motion be granted on the first ground (N/S never legally liable for the underlying-action judgment), without reaching the other three.  On 15 March 2013, following a review of both the MJ's report and recommendation and defendants' objections, the district court adopted the

report and recommendation and granted summary judgment to Empire, based on ruling that, due to Jalin's unconditional release, N/S had no legal liability to pay the underlying-action judgment.

## II.

Unlike Jalin and N/S, Liberty did not appeal.  Jalin and N/S claim the district court erred: in denying N/S' motion, joined by Jalin, to transfer venue to the district in California; and in granting summary judgment to Empire.

### A.

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought".  Denial of a transfer-venue motion is reviewed for abuse of discretion.  *E.g.*, *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 631 (5th Cir. 2008).  For the reasons that follow, the district court did not abuse its discretion.

Appellants contend the district court erred because this coverage action is simply a dispute between a California entity (N/S) and its insurers (Liberty and Empire).  Appellants assert:  the policies were negotiated, signed, and issued in California, and this coverage action could have been brought in the district in California, based on its ties with the insurance policies, the insured (N/S), and Jalin's contracting with, and purchasing goods from, N/S.

Appellants further assert the district court was required to review the private and public factors provided by this court to determine convenience and the interest of justice.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (listing factors).  Contending that each of those factors either favored transfer or was neutral, Appellants maintain it was an abuse of discretion to deny transfer.  They contend, *inter alia*, that all "key witnesses and business records" are in California, the district in Texas has "very little

4

local interest" in the coverage dispute, and the relevant contacts are those to the insurance agreement, not to the location of the insured risk.

The MJ analyzed the motion to transfer, and, following a *de novo* review, the district court adopted that report and recommendation. Assuming California had personal jurisdiction over Jalin, we agree with the district court's analysis of the private and public factors. *See Empire Indem. Ins. Co. v. N/S Corp.* (*Empire I*), No. 4:11-CV-166, 2011 WL 3648510, at *5–8 (E.D. Tex. 20 July 2011). Particularly, almost all non-party witnesses and all sources of proof needed to determine whether damages were covered by Empire's policy are in, or around, Texas, and subject to the district court's compulsory subpoena power. *See* Fed. R. Civ. P. 45(c) (place of subpoena compliance). The district court was also correct that *both* districts had an interest in the coverage action. *Id.* at *7 (citing *Mid-Continent Cas. Co. v. Petro. Solutions, Inc.*, 629 F. Supp. 2d 759, 767 (S.D. Tex. 2009) (holding venue of underlying events and venue of the insurance policy have local interest)).

### B.

A summary judgment is reviewed *de novo*, *e.g.*, *Citigroup Inc. v. Fed. Ins. Co.*, 649 F.3d 367, 370 (5th Cir. 2011), and should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law", Fed. R. Civ. P. 56(a). "In reviewing summary judgment, we construe all facts and inferences in the light most favorable to the nonmoving party." *Citigroup*, 649 F.3d at 371 (citation and internal quotation marks omitted).

For this diversity action, and pursuant to Texas law, the insured bears the burden of showing a claim is potentially covered by the policy, and the insurer bears the burden of establishing applicability of any policy exclusion or other affirmative defense. *See United Nat'l Ins. Co. v. Hydro Tank, Inc.*, 497

F.3d 445, 448 (5th Cir. 2007). Under Texas law, general contract rules and standards govern interpretation of an insurance policy. *E.g.*, *Citigroup*, 649 F.3d at 371. A court's "primary goal is to give effect to the written expression of the parties' intent". *Id.* (citing *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)). When the policy language is susceptible to only one reasonable interpretation, it is not ambiguous and must be interpreted as a matter of law. *Id.* (citing *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006)).

The district court, based on the MJ's report and recommendation, held: "Jalin gave a full release prior to entry of the [underlying-action] judgment", *Empire Indem. Ins. Co. v. N/S Corp.* (*Empire II*), No. 4:11-CV-166, 2013 WL 1103061, at *2 (E.D. Tex. 15 Mar. 2013); "[a]t the time of the final judgment in state court, N/S had no legal obligation to pay anything", *id.*; therefore, "as a matter of law, the condition that N/S 'be obligated to actually pay' an amount finally determined by judgment was not, and could never be, met", *id.*; and "N/S was not and is not legally liable for any judgment, verdict, or any other indebtedness as a result of the underlying action", *id.* Accordingly, the court held Empire could not be liable to Jalin (through a direct claim or its assignment from N/S) based on the underlying-action judgment against N/S, when N/S was released prior to its entry. *Id.* at *1.

Appellants assert, under Texas law and public policy, that the *timing* of the settlement, release, and covenant not to execute should be irrelevant to a determination of coverage. *See William M. Mercer, Inc. v. Woods*, 717 S.W.2d 391, 398–99 (Tex. App. 1986), *aff'd in part, rev'd in part on other grounds*, 769 S.W.2d 515 (Tex. 1988) (holding covenant not to execute signed post-judgment did not bar suit against insurer). Appellants further contend that, if an insured is forced to assign its claims against the disclaiming insurer in order to secure

a release and covenant not to execute and there is no evidence of collusion, the settlement does not eliminate the legal obligation on the judgment. *See id.* at 398 ("[A] covenant not to execute will not obviate the existence of damages when there is proof that an insured was forced to assign his rights . . . to obtain that covenant".); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 649 F. Supp. 2d 613, 625–26 (S.D. Tex. 2009) (barring bad faith or collusion with claimant, "covenant not to execute against the insured . . . does not release the insurance carrier from liability"). According to Appellants, each of those circumstances exists here and N/S was acting to protect itself from bankruptcy. Finally, Appellants assert the district court's decision promotes form over substance and discourages early settlement of disputes.

For the following reasons, Appellants' contentions fail. Under Texas law, "[a] release extinguishes any actual or potential claim the releasor may have against the releasee". *Riley v. Champion Int'l Corp.*, 973 F. Supp. 634, 649 (E.D. Tex. 1997) (quoting *Derr Constr. Co. v. City of Hous.*, 846 S.W.2d 854, 858 (Tex. App. 1992, no writ)); *see also Dresser Indus., Inc. v. Page Petro., Inc.*, 853 S.W.2d 505, 508 (Tex. 1993) (stating release "extinguish[es] the claim . . . as effectively as would a prior judgment"). Following a release, the releasor cannot sue the releasee's insurer "because the release precludes the prerequisite determination of [releasee's] liability". *Angus Chem. Co. v. IMC Fertilizer, Inc.*, 939 S.W.2d 138, 139 (Tex. 1997).

The Empire policy's insuring agreement provides payment "for 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies". The policy further provides that N/S' "ultimate net loss" is the amount for which it was "legally liable in payment of . . . 'property damage'", as determined by judgment or agreed upon in settlement.

7

Pursuant to the pre-entry-of-underlying-action-judgment settlement agreement between Appellants and Liberty, Jalin released N/S "from any and all *claims*, causes of action, actions, *judgments*, liens, indebtedness, damages, losses, *liabilities*, [and] demands . . . that [Jalin has] or may have against [N/S] . . . related to the Underlying Action". (Emphasis added.) Once N/S was released, the subsequently-entered judgment was "merely a fiction and had no legal effect", because the claim, judgment and liability had already been extinguished. *Empire II*, 2013 WL 1103061, at \*2. Further, the settlement agreement made clear: it was not an admission of liability; and the subsequent judgment could not "in any way be used to imply the existence of any liability to any Party" to the agreement. The unconditional release, therefore, meant N/S was not, and could never be, legally liable for the underlying-action judgment. As a result, N/S cannot satisfy the insuring agreement, and neither N/S nor Jalin may require Empire to pay a judgment for which N/S, Empire's insured, was never liable.

Appellants present no precedent addressing pre-judgment *release* of claims. Instead, they rely on precedent discussing the effect of post-judgment *covenants not to execute*. *See William M. Mercer*, 717 S.W.2d at 398–99 (analyzing post-judgment covenant with actual damages shown by entry of judgment); *Nat'l Union Fire Ins.*, 649 F. Supp. 2d at 625–26 (analyzing post-judgment covenant and noting "judgment from the Underlying Case [was] never released"). These decisions do not affect our analysis. In fact, the only opinion cited by either side discussing *pre-judgment release of claims* concluded "the insured never became liable for [the judgment]", and as a result, there was no coverage. *U.S. Fire Ins. Co. v. Lay*, 577 F.2d 421, 423 (7th Cir. 1978).

Although the settling parties attempted to carve-out claims against Empire by stating the agreement did "not release any claims against

8

No. 13-40426

[Empire]", this carve-out overlooks the effect of Jalin's unconditional release of N/S.  In reaching the settlement, Appellants were advised by "attorneys of their own choosing" and represented they understood "the terms . . . and effects" of the agreement.  They cannot avoid the effect of the unconditional release of N/S by claiming they intended to preserve claims against Empire.

## III.

For the foregoing reasons, both the denial of a transfer of venue and the summary judgment are AFFIRMED.

PRISCILLA R. OWEN, Circuit Judge, concurring:

I concur in the judgment and in Parts I and II.A. of the panel's majority opinion. I would resolve the coverage issue on the basis that the underlying primary insurance coverage was not exhausted. Accordingly, Empire's excess policy was never reached.

Empire's policy provides:

**SECTION I – INSURING AGREEMENTS**

. . . .

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.   **Insuring Agreement**

    a.   We will pay on behalf of the insured for "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right to associate with the "underlying insurer" and the insured to defend against any "suit" seeking those damages. But

        (1)   The amount we will pay for "ultimate net loss" is limited as described in **SECTION IV – LIMIT OF INSURANCE**;

\* \* \*

24.   **"Ultimate net loss"** means the total amount of damages for which the insured is legally liable in payment of "bodily injury", "property damage", "personal injury", or "advertising injury[.]" "Ultimate net loss" must be fully determined as shown in Condition **12. When Loss Payable**[.] . . .

\* \* \*

20.   **"Retained limit"** means the greater of

    **a.**   The sum of amounts applicable to any "claim" or "suit" from

        (1)   "Underlying insurance", whether such "underlying insurance" is collectible or not, and

        (2)   Other collectible primary insurance, or

    **b.**   The "self-insured retention"

No. 13-40426

Empire was obligated under its policy to pay N/S's "ultimate net loss" in excess of the "retained limit." It is undisputed that N/S's self-insured retention was $10,000, and that this self-insured retention was less than the amounts from insurance described in paragraph 20(a) above. Accordingly, the "retained limit" applicable in this case is determined by paragraph 20(a). Empire's policy required N/S to obtain primary insurance with a per-occurrence limit of at least $1,000,000, and N/S obtained that primary coverage from Liberty. Liberty paid only $650,000 to settle the underlying suit against N/S. N/S did not exhaust its primary coverage, as it was required to do before it could access the excess policy.[1]

N/S's payment of $450,000 is not included in the calculation. That was part of the resolution of N/S's disagreement with Liberty, the primary carrier, as to whether the damages claimed in the underlying suit were included in the property damage coverage of Liberty's policy. Unless and until N/S insisted that Liberty pay its policy limits and those limits were exhausted, N/S could not access the excess coverage provided by Empire's policy.

---

[1] *See, e.g., KLN Steel Prods. Co. v. CNA Ins. Cos.*, 278 S.W.3d 429, 443 (Tex. App.— San Antonio 2008, pet. denied) (confirming that "the limits of the primary insurance must be exhausted before the primary carrier has a right to require the excess carrier to contribute to a settlement") (emphasis and citation omitted).