**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**March 13, 2024**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAUL MICHAEL ASTORGA,

Defendant - Appellant.

_____

No. 22-2158
(D.C. No. 2:14-CR-01666-KG-1)
(D. N.M.)

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PAUL MICHAEL ASTORGA,

Defendant - Appellant.

No. 22-2160
(D.C. No. 2:21-CR-00407-KG-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

On November 3, 2020, officers with the Metro Narcotics and Federal Bureau of Investigation Task Force in Las Cruces, New Mexico, executed a warrant to arrest Paul Michael Astorga.  The arrest warrant stemmed from Mr. Astorga's violations of the conditions of his supervised release imposed on a previous federal conviction. Based upon evidence recovered from his apartment after his arrest, a superseding indictment charged Mr. Astorga with (1) being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924; (2) possession of fentanyl with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (3) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).  A jury convicted Mr. Astorga on all three counts, and the district court sentenced him to 320 months' imprisonment.  On appeal, Mr. Astorga challenges only his conviction on the two firearms-related counts underlying appeal number 22-2160.[1]   Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[1] The district court also revoked Mr. Astorga's supervised release and sentenced him to 24 months' imprisonment to run concurrently with his new 320-month sentence.  He filed a notice appealing that judgment, which resulted in appeal number 22-2158.  *See* R., Vol. 1 at 69.  But his briefs do not contain any arguments challenging that judgment.  He has therefore forfeited his appeal of the judgment at issue in appeal number 22-2158.  *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

## I.    Background

Mr. Astorga did not contest his guilt on the fentanyl charge at trial.  Regarding the two firearms charges, he contended that another person, Erica Peña, had brought a gun into his apartment on the day of his arrest without his knowledge.

Mr. Astorga's appeal of his firearms-related convictions centers on the district court's exclusion of prior statements by Officer Joseph Misquez in text messages he sent to Ms. Peña in which the officer (1) called her a "bad wife" and (2) stated he was her "get-out-of-jail-free card."  Mr. Astorga argues the court erred in excluding this evidence and violated his constitutional right to present a defense.

### A.    Prosecution's Case

Officer Misquez is a member of the Task Force and an officer with the Las Cruces police department.  He testified that he surveilled Mr. Astorga's apartment from across the street, using binoculars, for 45 minutes to one hour before Mr. Astorga's arrest.  During that time, he saw a man he identified as Mr. Astorga exit and reenter the apartment.  Officer Misquez then notified the United States Marshals, who had obtained the arrest warrant.  A team of deputy marshals gathered and proceeded to the location of Mr. Astorga's apartment.

Meanwhile, Officer Misquez observed a white pick-up truck pull into the apartment building's parking lot.  When a dog ran from the truck, a woman—later identified as Ms. Peña—chased after and caught the dog, then went to Mr. Astorga's apartment.  Officer Misquez described Ms. Peña as wearing a sports bra and tight-fitting pants, consistent with a photo of her on that day that was admitted as

Prosecution Exhibit 42. *See* Suppl. R., Vol. 2 at 4. He testified that she carried the dog—and nothing else—into Mr. Astorga's apartment. Officer Misquez said he did not see anyone other than Mr. Astorga and Ms. Peña enter or exit the apartment.

Upon arrival, the deputy marshals split up, with one going to the back of the apartment building while the others loudly knocked on Mr. Astorga's front door and announced themselves as police officers. No one answered. Each time a deputy attempted to use a key to unlock the deadbolt on the door, someone on the inside relocked it. While the deputies were trying to gain entry, the single deputy watching the back of the building observed a man he identified as Mr. Astorga exiting the apartment through a rear window. Mr. Astorga immediately returned inside when the deputy drew his gun and ordered him to show his hands.

One of the deputies at the front door ultimately kicked the door open. Entering the apartment, they encountered Ms. Peña and a dog in the living area adjacent to the front door. They handcuffed her and escorted her outside. Deputies Joseph Gutierrez and Jonathan La Marca both testified that they did not recall seeing Ms. Peña carrying anything at that time. When Mr. Astorga emerged from the bedroom area at the back of the apartment, deputies handcuffed him, removed him from the apartment, and eventually placed him in a police vehicle for transport. The deputies then performed a protective sweep, finding no one else in the apartment. They noticed, however, a strong odor of marijuana and observed what appeared to be methamphetamine and a piece of foil with a burnt pill that they believed to be some

kind of narcotic. Upon learning of these observations, Officer Misquez sought and obtained a warrant to search Mr. Astorga's apartment.

While waiting for issuance of the search warrant, the deputies secured the apartment along with Officer Luis Rios of the Las Cruces police department. Deputy La Marca and Officer Rios both testified that they did not allow anyone into the apartment, with the exception of a maintenance worker who came to repair the front door. After confirming that Ms. Peña had no outstanding warrant, the deputies removed her handcuffs and allowed her to leave. Deputy La Marca testified that he did not recall Ms. Peña asking to use the bathroom in Mr. Astorga's apartment, but he said that if such a request had been made his general practice would have been to search the bathroom for anything of evidentiary value then escort the person to and from that room.

Officer Misquez spoke with Ms. Peña in the apartment building's parking lot, after which they exchanged phone numbers via text messages. He testified that she did not have her phone with her and needed to retrieve it from her truck. Officer Misquez also stated that he did not know Ms. Peña before the date of Mr. Astorga's arrest.

On cross-examination, defense counsel asked Officer Misquez if he remembered how he referred to Ms. Peña in a text message. The prosecutor objected based on hearsay and relevance. Defense counsel stated that he expected Officer Misquez to say that he called Ms. Peña a "bad wife," R., Vol. 2 at 488 (internal quotation marks omitted). He explained that he wanted to establish,

5

contrary to the officer's prior testimony, that Officer Misquez did know Ms. Peña before that day. The district court sustained the objection. When asked what his objective was in communicating with Ms. Peña, Officer Misquez testified he was attempting to make her a confidential and reliable informant and that, if successful, it was possible she would be paid. He also reiterated his prior testimony that he did not see Ms. Peña carry anything into Mr. Astorga's apartment other than the dog. Defense counsel showed Officer Misquez a photo admitted as Defense Exhibit B. *See* Suppl. R., Vol. 2 at 5. Officer Misquez identified Ms. Peña in the photo and agreed that it accurately depicted how she was dressed on the day of Mr. Astorga's arrest. He also testified that he saw in the photo "a handbag on the bed of the truck," R., Vol. 2 at 508, and he agreed that it could carry the firearm that was eventually discovered in Mr. Astorga's apartment. On redirect, Officer Misquez testified that, when he observed Ms. Peña go into Mr. Astorga's apartment, he did not see that she had with her the brown purse appearing in Defense Exhibit B.

Officer Rios testified that he participated in securing and searching Mr. Astorga's apartment. He stated that he photographed the entire interior before the officers touched anything. Officer Rios's lapel camera recorded a video, admitted as Defense Exhibit C, while he took photographs and participated in the search. *See* Suppl. R., Vol. 3. He testified that he did not see any female belongings in the apartment. The officers found a baggie of 66 pills later identified as fentanyl on the floor of Mr. Astorga's bedroom closet under some clothing. About three feet away from the pills, they found a firearm with a loaded magazine concealed under a

6

bottom drawer that they pulled out of Mr. Astorga's dresser. The firearm was later identified as a 9mm semiautomatic pistol. Officer Rios testified that he photographed these items in the locations where they were found, as depicted in Prosecution Exhibits 29 and 35. *See* Suppl. R., Vol. 2 at 2-3.

**B.    Defense's Case**

To support Mr. Astorga's claim that Ms. Peña brought the gun to his apartment on the day he was arrested, defense counsel presented the testimony of Mr. Astorga's mother, Jasmine Martinez, and two women with whom Mr. Astorga had romantic relationships, Jasmine Manasco and Audrey Gomez.

Ms. Manasco testified that she stayed at Mr. Astorga's apartment the night before the day he was arrested. She stated that she knows Ms. Peña but said that they do not get along. Ms. Manasco testified that, on that day, Mr. Astorga stepped out of the apartment, then returned with Ms. Peña and a dog. She confirmed that Ms. Peña was dressed that day the way she appeared in Defense Exhibit B. She testified that Ms. Peña "was wearing that outfit with something right here (indicating) on her armpit. I'm not too sure what it was. She was trying to maneuver the dog, but it looked like a little purse wallet." R., Vol. 2 at 871. Ms. Manasco stated that she left Mr. Astorga's apartment after Ms. Peña arrived.

On cross-examination, Ms. Manasco admitted she was in a romantic relationship with Mr. Astorga and wanted to marry him some day. The prosecutor asked Ms. Manasco about a recorded telephone call she had with Mr. Astorga a few months before the trial. She denied that Mr. Astorga had coached her during that

conversation about what to say in her testimony.  But she later admitted that Mr. Astorga told her, "You were there around the time that she got there" and "[r]emember she was carrying something and you don't remember what."  *Id.* at 893 (internal quotation marks omitted).  Ms. Manasco also admitted that she has been convicted of a felony.

Mr. Astorga's mother, Ms. Martinez, testified that she went to his apartment after learning that he was being arrested.  When a police officer opened Mr. Astorga's door, Ms. Martinez saw two officers and Ms. Peña in handcuffs inside the apartment,[2] but Mr. Astorga was not there.  One of the officers brought Ms. Peña outside.  At least one officer stayed inside the apartment while Ms. Martinez was there.  Ms. Martinez testified that when she and Ms. Peña were waiting outside, Ms. Peña went back into the apartment to use the bathroom.  Both Ms. Peña and Ms. Martinez left the scene at about the same time.  Ms. Martinez testified that Ms. Peña had a dog and a purse with her, but she did not get a good look at the purse. She did not say when or where she saw Ms. Peña with a purse.

When Ms. Martinez returned to Mr. Astorga's apartment later that day, officers gave her a receipt for the items seized in the search, released the apartment to her, and left.  Ms. Martinez testified that Ms. Gomez and two other people arrived at Mr. Astorga's apartment, followed by Ms. Peña about an hour later.  Ms. Martinez

---

[2] Ms. Martinez initially testified that she "saw a girl in handcuffs."  R., Vol. 2 at 811.  She later referred to this girl as Ms. Peña.  *See id.* at 813.  It is unclear from the record when Ms. Martinez knew that the girl she saw was Ms. Peña.

described Ms. Peña as appearing worried and anxious while they talked about what had happened that day. She testified that Ms. Peña "admit[ted] that . . . she knew a gun was in the apartment," and that Ms. Peña said "[t]hat she got nervous when they were knocking and that she kind of slid [the gun] down her and kicked it under the couch." R., Vol. 2 at 835. According to Ms. Martinez, Ms. Peña said she did so because "she was in trouble before so she didn't want to get caught with nothing." *Id*. at 833. On cross-examination, Ms. Martinez admitted that, even though she knew Mr. Astorga was being charged with possession of a firearm, she never told anyone in law enforcement what Ms. Peña had said about a gun. Ms. Martinez agreed it would have been important to do so.

Ms. Gomez testified she had known Mr. Astorga for 25 years. She said she also knows Ms. Peña. She stated that she and Ms. Peña were at Mr. Astorga's apartment after the police left, along with his mother and others. Ms. Gomez testified that Ms. Peña said that, when the arrest warrant was being executed, "she had a firearm in her purse and that she was scared, so she took it out and she kicked it under the couch." R., Vol. 2 at 900. On cross-examination, Ms. Gomez admitted she never told anyone in law enforcement what Ms. Peña said about a gun. She acknowledged that she and Mr. Astorga had been romantically involved and she wanted to build a life with him, and she also admitted she had been convicted of a felony. Ms. Gomez testified that she had exchanged numerous text messages with Mr. Astorga after his arrest, including messages discussing Ms. Peña. On redirect,

9

Ms. Gomez testified that Ms. Peña was married but was having an affair with Mr. Astorga.

The defense also recalled Officer Misquez and asked him why he did not obtain a statement from Ms. Peña at the scene of Mr. Astorga's arrest. Officer Misquez testified that "[s]he wasn't a suspect at the time." R., Vol. 2 at 858. Defense counsel then asked, "Did you tell Ms. Peña that day that you are her 'get-out-of jail-free card?'" *Id.* The prosecutor objected based on hearsay and relevance, and also because the defense had improperly recalled Officer Misquez solely to impeach him. The district court sustained the objection.

The jury found Mr. Astorga guilty on all three counts.

## II.    Discussion

"We review a district court's evidentiary rulings for abuse of discretion, considering the record as a whole." *United States v. Cristerna-Gonzalez*, 962 F.3d 1253, 1266 (10th Cir. 2020) (internal quotation marks omitted). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *United States v. Silva*, 889 F.3d 704, 709 (10th Cir. 2018) (internal quotation marks omitted). "[W]e will not disturb an evidentiary ruling absent a distinct showing that it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error in judgment." *United States v. Channon*, 881 F.3d 806, 809-10 (10th Cir. 2018) (internal quotation marks omitted). We review de novo whether a district court's

10

evidentiary ruling violates a defendant's constitutional right to present a defense. *United States v. Hammers*, 942 F.3d 1001, 1009-10 (10th Cir. 2019).

### A.    Bad-Wife Statement

On cross-examination, defense counsel established that Officer Misquez had exchanged text messages with Ms. Peña. Regarding a particular message, he asked the officer, "[D]o you remember what you said you were going to call her?" R., Vol. 2 at 487. When Officer Misquez responded, "Yes," defense counsel asked, "And what was that?" *Id.* The prosecution objected based on hearsay and relevance.

Defense counsel stated that he wanted to elicit testimony that Officer Misquez had called Ms. Peña a "bad wife" in a text message. *Id.* at 488 (internal quotation marks omitted). He argued this statement was not hearsay. As to relevance, he contended the officer's bad-wife statement suggested that Officer Misquez and Ms. Peña had a prior relationship because "[h]ow would [Officer Misquez] know that Erica Peña is a bad wife unless he had some conversations before" Mr. Astorga's arrest. *Id.* Defense counsel stated that he was "trying to impeach [Officer Misquez] by refreshing his recollection on what he said to [Ms. Peña] and how that reference is inconsistent with his testimony that he has no prior knowledge or relationship with [Ms. Peña]." *Id.*

The district court responded that Officer Misquez "hasn't said he doesn't remember, so there's no need to refresh his recollection." *Id.* at 489. When the court sought additional explanation from defense counsel as to the relevance of Officer Misquez calling Ms. Peña a bad wife, he responded that "it's consistent with his

11

character for untruthfulness" and he referenced an "inconsistent" statement that Officer Misquez made in 2013. *Id.* The district court concluded:

> I'm not seeing the connection here . . . . I'm trying to give you some room to help me understand, but I'm not hearing it, based on what you just said. I don't hear that he's denied it. I don't hear that he doesn't recall. And the question you're asking is calling for hearsay on what she told him and even what he told her. And so I'm going to sustain the objection, just based on what I've heard so far . . . . I don't see the connection.

*Id.* at 489-90. The court suggested that defense counsel could ask direct questions to establish a relationship between Officer Misquez and Ms. Peña. And if the officer did not remember, defense counsel could use the text messages between them to refresh his recollection. Defense counsel continued to cross-examine Officer Misquez, including regarding the officer's attempt to recruit Ms. Peña as a confidential source, but he did not ask any further questions regarding a relationship predating his arrest.

On appeal, the government concedes that Officer Misquez's out-of-court statement that Ms. Peña was a bad wife was not hearsay because it was not offered for its truth. Therefore, the question we address is whether the district court abused its discretion in finding that Mr. Astorga failed to show the testimony was relevant. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Mr. Astorga now argues that Officer Misquez's statement calling Ms. Peña a bad wife was relevant to his defense because proof of a relationship between them

12

predating Mr. Astorga's arrest could establish that Officer Misquez was biased in favor of Ms. Peña when he testified about what she carried into Mr. Astorga's apartment. But defense counsel did not clearly articulate the relevance of Officer Misquez's bad-wife statement in this manner at trial. He instead stated that he wanted to refresh Officer Misquez's recollection and impeach his previous testimony regarding when the officer had met Ms. Peña. He further contended the bad-wife statement was consistent with Officer Misquez's "character for untruthfulness." R., Vol. 2 at 489.[3] Although defense counsel spoke in general terms about "trying to develop the relationship here," *id.* at 490, he acknowledged he did not know "what kind of relationship they had," *id.*, and he did not tell the district court he intended to establish that, based upon their preexisting relationship, Officer Misquez's testimony was biased in favor of Ms. Peña. Considering the trial record, we conclude that Mr. Astorga fails to show the district court's lack-of-relevance finding regarding Officer Misquez's bad-wife statement was an arbitrary, capricious, whimsical, or manifestly unreasonable judgment.

### B.    Get-out-of-jail-free-card Statement

Defense counsel recalled Officer Misquez in the defense's case in chief. After establishing that the officer did not take a statement from Ms. Peña at the scene of his arrest, he asked, "Did you tell Ms. Peña that day that you are her 'get-out-of jail-free

---

[3] We note that Mr. Astorga's summary of his response to the prosecution's relevance objection is consistent with our description here. *See* Aplt. Opening Br. at 8-9.

card?'" R., Vol. 2 at 858. The prosecution objected based on hearsay and relevance. Defense counsel acknowledged he had not laid a proper foundation to confront Officer Misquez with his prior statement. Regarding relevance, defense counsel argued that Officer Misquez's credibility was at issue because he had a prior history of untrustworthiness from 2013. He noted that Officer Misquez was the only witness to testify about seeing what Ms. Peña took into the apartment. When the district court sought further clarification, defense counsel stated, "The relevance is if [Officer Misquez] even said it." *Id.* at 860. The prosecution objected that it was improper for defense counsel to recall Officer Misquez to impeach him. Defense counsel then responded "No" when the district court asked if he had any other questions for Officer Misquez. *Id.* at 863. The district court sustained the prosecution's objection, stating, "I'm construing this as a question for impeachment purposes only." *Id.*

Following the trial, the district court entered an order elaborating on its reasoning for excluding Officer Misquez's get-out-of-jail-free-card statement. It said the statement was likely hearsay. Regarding Mr. Astorga's argument that he intended to impeach the officer, the court concluded he could not call a witness solely to impeach him and that defense counsel had not articulated any other reason for recalling Officer Misquez. Further, Mr. Astorga had ample opportunity to impeach Officer Misquez with his past conduct during cross-examination but chose not to. The court held that Mr. Astorga also had not elicited any statement from Officer Misquez that could be contradicted by his prior get-out-of-jail-free-card statement,

14

which it concluded involved an issue peripheral to the case.  The court added that

"there is real concern here that even with a limiting instruction, the jury could misuse

the inconsistent statement as substantive evidence, or be confused by it, rather than

consider it only as pertinent to the witness's credibility."  Suppl. R., Vol. 1 at 319.

Concluding its reasoning on why it sustained the government's objection, the district

court stated:

> Finally, assuming for a moment that the prior statement were
> admissible, it is irrelevant and fails the [Fed. R. Evid.] 403 balancing test.
> The Court finds the connection between the text message statement and the
> witness's character for truthfulness tenuous at best.  The Court further
> concludes that the risk of confusion, misleading the jury, or asking
> cumulative questions well outweighs any probative value.

*Id.*

On appeal, Mr. Astorga argues Officer Misquez's statement that he was

Ms. Peña's get-out-of-jail-free card was not hearsay because it was not offered for its

truth.  He also now argues that "[t]he statement is proof of bias because it shows that

Officer Misquez favored [Ms.] Peña by offering to be her get-out-of-jail-free card and

that his testimony about her not taking anything into the apartment was therefore not

credible."  Aplt. Opening Br. at 15.  As with Officer Misquez's bad-wife statement,

defense counsel did not clearly articulate a bias argument in response to the

prosecution's objection to the officer's get-out-of-jail-free-card statement.  *See* R.,

Vol. 2 at 858-60.  But in any event, Mr. Astorga's bias theory depends on the truth of

the statement because there is no inference of bias unless Officer Misquez was or

believed himself to be Ms. Peña's get-out-of-jail-free card.  We therefore conclude

that the district court did not err in holding it was hearsay.

Mr. Astorga argues Officer Misquez's statement that he was Ms. Peña's

get-out-of-jail-free card was nonetheless admissible under Fed. R. Evid. 613(b) as

extrinsic evidence of a prior inconsistent statement with which he could attack the

officer's credibility.  As he acknowledges, however, such evidence cannot be used

for impeachment unless the witness first testifies in a manner inconsistent with his

prior statement.  *See United States v. Caraway*, 534 F.3d 1290, 1298 (10th Cir. 2008)

(holding witness's prior statement "was not impeachment evidence because she had

[not yet] testified to the contrary").  But Mr. Astorga points to no inconsistent

testimony by Officer Misquez before defense counsel asked, "Did you tell Ms. Peña

that day that you are her 'get-out-of jail-free card?'"  R., Vol. 2 at 858.  We therefore

conclude that Mr. Astorga did not properly offer the statement as impeachment

evidence under Rule 613(b).[4]

Moreover, Mr. Astorga does not address the district court's final ground for

excluding Officer Misquez's get-out-of-jail-free-card statement.  The court concluded

---

[4] Because we conclude that Mr. Astorga did not properly offer the hearsay get-out-of-jail-free-card statement as impeachment evidence, we need not address his contention that the district court erred in alternatively concluding that the statement was inadmissible because defense counsel improperly recalled Officer Misquez solely to impeach him.  *See, e.g.*, *Caraway*, 534 F.3d at 1298 (noting "otherwise admissible evidence" may be excluded "when the record clearly and unequivocally establishes that the party's primary purpose in calling the witness or in asking the question was to utilize a prior hearsay statement as substantive evidence" (internal quotation marks omitted)).

that, even if admissible, it "fails the Rule 403 balancing test" because "the risk of confusion, misleading the jury, or asking cumulative questions well outweighs any probative value." Suppl. R., Vol. 1 at 319.

Mr. Astorga fails to show the district court abused its discretion in excluding Officer Misquez's out-of-court statement that he was Ms. Peña's get-out-of-jail-free card.

### C.    Harmless Error

The government argues that, in any event, any non-constitutional error was harmless. We agree. "A non-constitutional error is harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *United States v. Roach*, 896 F.3d 1185, 1194-95 (10th Cir. 2018) (internal quotation marks omitted). To determine the effect of an error, "we review the entire record de novo, examining the context, timing, and use of the erroneously . . . excluded[] evidence at trial and how it compares to properly admitted evidence." *Id.* at 1195 (internal quotation marks omitted). The government bears the burden of showing harmlessness by a preponderance of the evidence. *Id.*

The alleged errors related only to Mr. Astorga's attack on Officer Misquez's credibility, and specifically his testimony that he did not see Ms. Peña carry anything into the apartment other than a dog. In light of the following evidence, we conclude the alleged errors did not have a substantial influence on the outcome of Mr. Astorga's trial as to his two firearms-related convictions:

17

- Testimony and other evidence that officers found a loaded handgun concealed under a drawer in Mr. Astorga's dresser, within feet of fentanyl pills he admitted possessing for distribution;

- Expert testimony that drug traffickers frequently possess the type of weapon found in Mr. Astorga's bedroom;

- Testimony by two deputy marshals that they did not recall seeing Ms. Peña carrying anything when she was handcuffed;

- Prosecution Exhibit 42, which shows Ms. Peña in handcuffs next to a dog, but no purse;

- Officer Rios's testimony that he saw no female belongings in the apartment;

- The absence of the brown purse seen in Defense Exhibit B from Officer Rios's lapel camera video taken during the search;

- The lack of testimony by any officer about finding a brown purse in Mr. Astorga's apartment;

- Officer Misquez's uncontested testimony that Ms. Peña had to retrieve her phone from her truck;

- The weakness in Ms. Martinez's and Ms. Gomez's testimony that Ms. Peña stated she had removed a gun from her purse and kicked it under the couch when there was no evidence that a gun was found under a couch in the apartment and neither witness had reported such a statement to law enforcement;

- The reasonable inference that Mr. Astorga had coached Ms. Manasco in a post-arrest phone call regarding her testimony about being in the apartment when Ms. Peña arrived and what Ms. Peña was carrying; and

- The impeachment of Mr. Astorga's witnesses based upon their biases in favor of Mr. Astorga due to their close relationships with him.

Considering the trial record as a whole, we conclude that the limited restrictions on Mr. Astorga's examination of Officer Misquez did not affect the outcome of the case, and any non-constitutional error was therefore harmless.

### D.    No Constitutional Violation

The Fifth and Sixth Amendments grant a defendant "the right to present a defense." *United States v. Bishop*, 926 F.3d 621, 626 (10th Cir. 2019) (internal quotation marks omitted).  This includes "the right to testify, present witnesses in his own defense, and cross-examine witnesses against him." *Id.* (internal quotation marks omitted).  To establish a violation of the constitutional right to present a defense, Mr. Astorga must show "(1) the district court abused its discretion in excluding the evidence at issue; and (2) the excluded evidence was of such an exculpatory nature that its exclusion affected the trial's outcome." *Hammers*, 942 F.3d at 1012 (internal quotation marks omitted).

We have concluded that Mr. Astorga failed to show an abuse of discretion. But even if there were error, he has not satisfied the second requirement.  In demonstrating prejudice, he must show that a "reasonable jury might have received a significantly different impression of" Officer Misquez's credibility had the court

19

admitted evidence of his prior statements. *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). The question is "whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *United States v. Holloway*, 826 F.3d 1237, 1249 (10th Cir. 2016) (internal quotation marks omitted).

Mr. Astorga contends the excluded statements could have affected the trial's outcome because his defense was that he did not possess the gun, while Officer Misquez testified that he did not see Ms. Peña carry anything into the apartment but the dog. He asserts he therefore needed to confront Officer Misquez with his prior statements to establish the officer's bias in favor of Ms. Peña.

We are not persuaded that the excluded evidence was of such an exculpatory nature that Mr. Astorga has demonstrated a constitutional violation. Mr. Astorga was able to establish that Officer Misquez had exchanged text messages with Ms. Peña and had attempted to recruit her as a confidential informant. And we agree with the district court that the connection between Officer Misquez's get-out-of-jail-free-card statement and his character for truthfulness was tenuous at best. The connection between Officer Misquez's bad-wife statement and his credibility is weaker still. Moreover, the exclusion of the prior statements did not prevent Mr. Astorga from cross-examining Officer Misquez regarding (1) his prior-relationship theory based on the officer's perception of Ms. Peña as a bad wife, or (2) his bias theory based on the officer's belief that he was Ms. Peña's get-out-of-jail-free card. Finally, in his arguments to the district court regarding evidence challenging Officer Misquez's credibility, defense counsel noted an incident involving the officer in 2013. But

although the district court agreed that a police department report regarding that incident was probative of Officer Misquez's credibility, defense counsel never asked Officer Misquez about that incident or the report. The court's exclusion of other evidence potentially relevant to Officer Misquez's credibility did not preclude him from doing so.

Mr. Astorga fails to show a reasonable jury might have received a significantly different impression of Officer Misquez had the officer been permitted to testify about his previous statements to Ms. Peña. He therefore does not demonstrate that the district court's exclusion of that evidence deprived him of his right to present a defense.

## III.   Conclusion

We affirm the district court's judgments in appeal numbers 22-2158 and 22-2160.

Entered for the Court

Bobby R. Baldock
Circuit Judge

21